# AETNA CASUALTY & SURETY COMPANY

## *vs.*

## ABRAHAM GERBER ET AL.

*Burglary Insurance—Description of Goods—Warranty
Clause—Parol Evidence.*

Where a policy of burglary insurance covered "direct loss by
burglary of merchandise described in the warranties," and "loss
by damage to such merchandise * * * including furniture, fix-
tures," etc., and the warranties described only "woollen cloth"
and "woollen skirts," there could be no recovery if the evidence
showed that only silk merchandise was stolen, and there was no
evidence of damage to furniture or fixtures. pp. 445, 446

A printed statement in the policy that the insurer shall not
be liable in excess of a named per cent. of the amount of insur-
ance on silks, furs and laces does not show that the policy, which
in terms covered woollen goods only, was intended also to cover
silk goods. p. 446

Where the insuring clause of a policy refers to a warranty
clause for a description of the property insured, and such war-
ranty clause contains the only description of such property, the
effectiveness of that clause for the purpose of description is
independent of its materiality as a warranty. pp. 446, 447

If the policy contains a certain, clear, and definite descrip-
tion of the property insured, parol evidence is not admissible
to show that the policy was intended to cover other and differ-
ent property. p. 447

*Decided January 27th, 1922.*

Appeal from the Superior Court of Baltimore City
(AMBLER, J.).

Action by Abraham Gerber and Bernard Land, co-partners,
trading as the Eastern Skirt Company, against the Aetna
Casualty & Surety Company of Hartford, Connecticut. From
a judgment for plaintiffs, defendant appeals. Reversed.

The cause was argued before BOYD, C. J., BRISCOE,
THOMAS, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*William D. Macmillan*, with whom were *Semmes, Bowen & Semmes* on the brief, for the appellant.

*Morris A. Rome* and *James Morfit Mullen*, for the appellees.

THOMAS, J., delivered the opinion of the Court.

This appeal is from a judgment recovered by the appellees on a policy of mercantile burglary insurance issued to them by the Aetna Casualty and Surety Company of Hartford, Connecticut.

The plaintiffs, under the name of the Eastern Skirt Company, were engaged in the manufacture of ladies' skirts in Baltimore City, Maryland, on the second floor of No. 505 East Baltimore Street, and, on the 17th of July, 1919, obtained from the appellant the policy sued on for $3,000 to cover loss of merchandise by burglary during the period of twelve months from the date of the policy, for which they paid a premium of $63.

The declaration alleges that the plaintiffs' premises were burglarized on the 16th of February, 1920, and that merchandise to the value of $1,048 was stolen; that the plaintiffs furnished the defendant full proof of their loss, but that the defendant refused to pay the same. The defendant filed the pleas of "never indebted" and "never promised" as alleged, and at the trial the plaintiff offered in evidence the policy sued on, the proofs of loss furnished by them to the defendant, and produced evidence tending to show that their place of business was entered during the night of February 16th, 1920, and that 176⅜ yards of silk, which cost $617.32; thirty-seven silk skirts, which cost $416.25, thirty-seven wire skirt hangers, which cost $3.33, one sample case, which cost $7.00, and one sample case, which cost $5.00, were stolen. The plaintiffs, in accordance with the requirements of the policy, also offered evidence for the purpose of showing that the entry into their premises was by "actual force and violence," of which force and violence there were "visible marks

upon the premises," while the defendant offered evidence tending to show that there were no such marks of force and violence upon the premises.

During the trial there were a number of exceptions reserved to rulings of the court on the evidence, and one to its action on the prayers. The important question in the case is the one raised by the defendant's first, second and third prayers, by which the court was asked to instruct the jury (1) that the evidence was not sufficient to entitle the plaintiffs to recover, and (2) that the silk, silk skirts, skirt hangers and sample cases mentioned in the evidence as having been stolen were not covered by the policy, and that therefore the verdict should be for the defendant. In order to determine this question we must refer at some length to the terms of the policy, the original of which was, by agreement of counsel, produced at the argument and left with this Court for further examination and use in deciding the case.

The policy provides as follows:

"In consideration of the premium herein provided, The Aetna Casualty and Surety Company, of Hartford, Connecticut, does hereby agree to indemnify the assured described in the warranties hereof within the amounts expressed herein:

"1. For direct loss by burglary of merchandise described in the warranties hereof, from within the assured's premises by any person or persons making felonious entry into such premises by actual force and violence when the premises are not open for business, of which force and violence there shall be visible marks made upon the premises at the place of entry by tools or explosives.

"2. For direct loss by burglary of money, bullion, uncancelled United States postage and revenue stamps in current use and negotiable securities for an amount not exceeding 10% of the total sum insured under this policy, nor in any event in excess of $5,000.00, from within the assured's safe or vault in the premises by such person or persons aforesaid making felo-

nious entry into such safe or vault by actual force and violence, of which force and violence there shall be visible marks made upon the exterior thereof by tools or explosives.

"3. For direct loss by damage (except by fire) to such merchandise, money and securities and to the premises, including the furniture, fixtures and safes therein, caused by such person or persons.

*"This insurance is subject to the following conditions, which shall be considered as conditions precedent to any recovery under this policy."*

The conditions are printed in separate sections, lettered from A to S inclusive. Sections Q. R and S are as follows:

"Q. The policy period shall be 12 months, beginning at noon on the 17th day of July, 1919, and ending at noon on the 17th day July, 1920, standard time, at the place of risk.

"R. The insurance granted by this policy and the premium charged thereon are apportioned to apply specifically as follows, and the total liability of the Company under this policy is limited to the sum of Three Thousand Dollars ($3,000.) and the total premium for this policy is Sixty-three Dollars ($63.00).

"(a) $3.000. On money and negotiable securities (subject to the limits specified under paragraph 2 of the insuring clause) and on merchandise described under statement 5 of the Warranties, provided, however, that the Company shall not be liable in excess of 20% of the amount of insurance attaching specifically under this section, for loss of any of the following kinds of merchandise: silks, furs, linen laces, silk laces, hand embroideries and feathers. Premium, $63.00.

"(b) $..... On money and negotiable securities (subject to the limits specified under paragraph 2 of the insuring clause) and on merchandise described in statement 5 of the Warranties, provided, however, that the Company shall not be liable in excess of 20% of the amount of insurance attaching specifically under this section for loss of any of the following kinds of

merchandise: gold pens, fountain pens, cutlery, cigars, tobacco and smokers' articles. Premium, $......

"(c) $..... On money and negotiable securities (subject to the limits specified under paragraph 2 of the insuring clause) and on merchandise described in statement 5 of the Warranties. Premium, $......

"8. The following Warranties number 1 to 13, inclusive, are hereby made a part of this contract, and are acknowledged and warranted by the assured to be true upon the acceptance of this policy."

Warranty 1 gives the name of the assured. Warranty 2 gives the location of the building and address of the assured. Warranty 3 states the part of the building occupied by the assured. Warranty 4 gives the character of the business conducted by the assured on the premises, which is stated to be "Skirt mfr.—Woollen." Warranty 5 describes the merchandise insured, including furniture and fixtures, as follows: "Woollen cloth, woollen skirts and ready manufactured or in process of manufacture," and the remaining warranties are in reference to matters with which we are not concerned in this case. A part of these warranties are printed, so that the name of the assured, the location of the building and address of the assured, the part of the building occupied, the business conducted by the assured, and the description of the merchandise insured may be written or typewritten in the warranties in accordance with the requirements of the particular policy. For instance, the printed part of warranty 4 is as follows: "4. The business conducted by the assured on the premises is," and the balance, to wit, "Skirt mfr.—Woollen," is typewritten, and the printed part of warranty 5 is as follows: "5. The description of merchandise to be insured including furniture and fixtures is," and the balance, to wit, "Woollen cloth, woollen skirts and ready manufactured or in process of manufacture," is typewritten.

Turning to the *insuring clause* of the policy, and to paragraphs 1 and 2 thereof, we find that what the defendant

agreed to do was to indemnify the assured for direct loss by burglary "of merchandise described in the warranties," and for "loss by damage to such merchandise, * * * including furniture, fixtures," etc., and when we turn to the *warranties* we find that the merchandise described therein "is woollen cloth, woollen skirts and ready manufactured or in process of manufacture." The only merchandise covered by the policy was that described in warranty 5, viz, woollen cloth, and woollen skirts, manufactured "or in process of manufacture," and the indemnity agreed to in respect to fixtures and furniture was direct loss "by damage" thereto, while the evidence shows that the only merchandise stolen were 176⅜ yards of silk and 37 silk skirts, and there is no evidence of *damage* to any of the furniture or fixtures. It would seem, therefore, clear that the loss complained of and described in the evidence was not covered by the policy sued on.

Learned counsel for the appellees rely upon sub-section (a) of section R of the conditions of the policy, where it is provided that the company will not be liable in excess of 20% of the amount of insurance for loss of silks, furs, etc., as showing that the policy was intended to cover silk and silk skirts. But that sub-section, all of which is printed, except the amount of premium, refers to warranty 5 as containing the description of the merchandise covered by the policy, and it is apparent that the statement therein in reference to silks, furs, etc., was only intended to apply when they are described in warranty 5 as the merchandise insured. As further indicating that the insurance was confined to woollen cloth and woollen skirts, warranty 4 describes the business conducted by the assured as "Skirt mfr.—Woollen." The appellees further contend that under the decisions in this State, "in order for a warranty to avoid a policy it must be material, and materiality is a fact to be passed upon by the jury." Assuming that that is a correct statement of the law, it is obvious that it can have no application in this case. We are not here dealing with the statement contained in

warranty 5 simply as a *warranty,* but as made by reference a part of the *insuring clause* of the policy, and as containing the *only* description of the subject-matter of the insurance contract. Without this description of the property insured the policy would be lacking in the most essential feature, for the insuring clause expressly states that the merchandise covered by the policy is the merchandise "described in the warranties," and warranty 5 is the only warranty containing such a description.

Counsel for the appellees also call attention to the testimony of one of the plaintiffs that all manufacturers of woollen skirts also manufacture silk skirts, but certainly such evidence cannot have the effect of changing or contradicting the clearly expressed provisions of the written contract. Where the terms of a contract are uncertain and ambiguous there is no good reason why parol evidence should not be resorted to in order to identify the subject-matter. But where the description of the property covered by a policy is certain, clear and definite, it would be dangerous, indeed, to admit such evidence for the purpose of showing that the policy was intended to cover other and different property. If the statements in a policy are the result of a mistake, a court of equity should be resorted to to reform it (14 *R. C. L.,* p. 902, sec. 80), but until that is done, clear and unambiguous terms should stand in a court of law as expressing the intention of the parties. 14 *R. C. L.,* p. 938, sec. 112.

As the loss sustained by the plaintiffs was not covered by the policy sued on, one of the defendant's rejected prayers, withdrawing the case from the jury, should have been granted. In this view of the case it is not necessary to consider the other questions presented by the record, and the judgment must be reversed, without awarding a new trial.

*Judgment reversed, with costs to the appellant, without awarding a new trial.*