JOHN C. LEE, Respondent, *v.* THE PREFERRED ACCIDENT INSURANCE COMPANY OF NEW YORK, Appellant.

First Department, April 30, 1926.

Insurance — burglary insurance — action on policies insuring against burglary while plaintiff's premises were not open for business and where entry was made by force, and evidence thereof was left on entrance — plaintiff agreed to keep burglar alarm connected and did so when building was closed — after opening place of business robbers entered, held up plaintiff and employee, broke into inner room and stole barrels of alcohol — burglary did not occur during non-business hours — no evidence of violence on entrance — alarm was disconnected at time of burglary — plaintiff cannot recover.

The plaintiff who sells alcohol for non-beverage purposes under government supervision cannot recover under burglary insurance policies the value of alcohol stolen while the plaintiff's premises were open for business, under policies insuring the plaintiff against burglary by persons who should make felonious entry into his premises by actual force and violence " when the premises are not open for business, of which force and violence there shall be visible marks made upon the premises at the place of such entry by tools, explosives, electricity or chemicals; " and also providing that a burglar alarm system should be kept

in operation, since the evidence shows that after the plaintiff's place was opened for business in the morning, three men entered, held up the plaintiff and his employee, broke into an inner room and took therefrom several barrels of alcohol; that at the time of the burglary the burglar alarm system had been disconnected in accordance with the usual practice of disconnecting the system as soon as the plaintiff's building was open for business; that the burglars did not forcibly enter the building and did not leave any evidence of force on the entrance although they did break into an inner room after entering the building. The conditions of the policy that the burglary must have occurred during the time when the plaintiff's building was not open for business, that it must have been entered by force and violence, and that there must have been visible marks upon the premises at the place of entry of the use of force and violence, were not met by the plaintiff, and furthermore, if it could be said that the entry was made forcibly within the meaning of the policy at a time when plaintiff's establishment was not open for business and that the burglars broke into an inner room which had not then been opened for business, then the plaintiff cannot recover because at that time the burglar alarm system had been disconnected.

APPEAL by the defendant, The Preferred Accident Insurance Company of New York, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 27th day of February, 1925, upon the verdict of a jury rendered by direction of the court.

*Theodore H. Lord* [*Harry A. Talbot* with him on the brief], for the appellant.

*Douglass Newman,* for the respondent.

MERRELL, J. The action was to recover upon two policies of burglary insurance issued by the defendant. The first of these policies was No. 22284 and was dated March 18, 1921, and on that date delivered to the plaintiff, which policy was extended by indorsement thereon, No. 66428, dated March 18, 1922, also delivered to the plaintiff. By the said policy the defendant insured the plaintiff against loss or damage by burglary, not exceeding in amount the sum of $5,000, occurring between the 18th day of March, 1921, and the 18th day of July, 1922. By the said policy, a copy of which is annexed to the complaint, in consideration of the payment to the defendant of a premium of $225 and of the statements contained in the said policy made by the assured on the acceptance thereof and warranted by the assured to be true, the defendant agreed to indemnify the assured, the plaintiff herein, subject to the general and special agreements, terms and conditions stated in the policy, against loss by burglary, as follows: " For all loss by burglary of merchandise usual to the Assured's business, as described in Schedule hereof, and furniture and fixtures, from within the premises as hereinafter defined, occasioned by any

person or persons who shall have made felonious entry into the premises by actual force and violence when the premises are not open for business, of which force and violence there shall be visible marks made upon the premises at the place of such entry by tools, explosives, electricity or chemicals    *    *    *."

At the time of the issuance of the policy and to and including the 23d day of May, 1922, when the plaintiff alleges a burglary coming within the terms of the policy occurred, the plaintiff was in business at 34 Moore street in the borough of Manhattan, city of New York, as a wholesale dealer in alcohol for non-beverage purposes. Plaintiff's place of business consisted of a five-story building, the only entrance to which was by means of double front doors leading from the street into the building. The plaintiff was the lessee of the entire building and occupied the same solely for the purpose of carrying on his business. The plaintiff was a distributor of non-beverage alcohol in barrel lots under governmental supervision, selling the same to customers holding permits for the purchase thereof. The government required the plaintiff to keep his place of business open for business from nine o'clock in the forenoon to four o'clock in the afternoon on each business day, and he was subject° to visitation by government agents during business hours. Among the statements contained in the policy and warranted by the assured to be true was a provision that a burglar alarm system was maintained, which would be tested and left duly connected at the close of each business day while the policy was in force, which alarm system was stated to protect with traps all inaccessible windows, and with screens all accessible windows, except stationary show windows, and all doors, transoms, skylights and other openings leading from the premises, and also protected all ceilings and floors not constructed of concrete, and all hall and partition walls inclosing the premises; also all accessible windows, except stationary show windows, and all doors, transoms, skylights and other openings leading from the premises. By a rider attached to the policy it was understood and agreed that a Holmes alarm would be maintained on the premises during the term of the policy. The evidence shows that the plaintiff complied in all respects with the requirement of the policy as to the maintenance of the Holmes burglar alarm system upon the premises covered by the policy. Plaintiff's first cause of action set forth in his complaint was upon said policy of burglary insurance.

The second cause of action set forth in the complaint was upon a second policy of insurance issued by the defendant, being policy No. 23801, dated February 17, 1922, duly executed and delivered to the plaintiff, whereby the defendant, in. consideration of the

payment to it of a premium of $105, insured the plaintiff against loss or damage by burglary, not exceeding the sum of $5,000, for loss or damage occurring between February 17, 1922, and August 17, 1922, a copy of which policy is also annexed to the complaint. The policy described in the second cause of action, with riders attached thereto, was in the same form as the policy described in the first cause of action, except that the clause referring to the portion of the building occupied solely by the assured in conducting his business was the " entire building," instead of the " grade floor " stated in the policy upon which the plaintiff's first cause of action was based.

As before stated, the only entrance to the building wherein the plaintiff carried on his business was by the double doors leading directly from the street. These outer doors, except during business hours, were locked with a Yale lock and also by means of a padlock. In entering plaintiff's place of business by this outer entrance, one stepped first into an entryway about six or seven feet square. Plaintiff's office for the transaction of his business was located on the second floor, a stairway leading from the entryway to the office. At the left of the entryway was a glass-panel door leading into a small shipping office, and to the right of this glass-panel door and leading into the grade floor that was used for storage of barreled alcohol convenient for delivery to customers, were double doors of wooden slats or lattice work. These double doors swung inward and were fastened on the inside by means of a wooden bar which could only be lifted from the inside. Entrance to the grade storage room was effected by passing through the glass-panel door into the shipping office and then by another door from the shipping office into the storage room. From the inside of the storage room the bar upon the lattice doors could be lifted and the doors opened when it was necessary to remove the barrels of alcohol therefrom. In the basement or cellar of the building plaintiff kept his main supply of barreled alcohol, the barrels being raised by means of an electric hoist from the cellar to the grade floor as required. There was no entrance to the cellar except through these lattice doors leading upon the grade floor. In his business the plaintiff employed a shipping clerk by the name of Christian, whose duty it was to attend to the taking in and delivery of alcohol to customers, also to attend to the government records, obtain permits from the prohibition office and act generally as an all-around man. Christian opened the place for business each morning about nine o'clock, and the establishment was kept open for business each day until five o'clock in the afternoon. Plaintiff also employed a young lady as stenographer in his office.

He had no other employees at his place of business, although he had several salesmen who were working upon a commission basis. The evidence shows that it was the custom on each morning when the plaintiff's establishment was opened for business for the employee Christian to unlock the front doors and signal the Holmes office that it was the plaintiff's employee disconnecting the burglar alarm. The alarm remained disconnected each day until the establishment was closed at the end of business at five o'clock in the afternoon, when the burglar alarm system was again connected.

Plaintiff, sworn as a witness in his own behalf, testified that he kept books and records showing what merchandise he had in his place of business, and that he himself took personal charge of his books; that the books were kept by his stenographer and typewriter under the direction of the plaintiff. Plaintiff testified he was at his place of business practically all the time. He testified that on the 23d of May, 1922, he had on hand at his place of business 1,264 wine gallons and a fraction of alcohol; that on the grade floor he had fourteen barrels of alcohol containing 709 37/100 wine gallons of alcohol; that he saw the alcohol there on the night of May twenty-second. The alcohol of which the plaintiff testified, and which he had on hand, was pure grain alcohol, known to the trade as non-beverage alcohol, the market price of which at the time was five dollars and ten cents per wine gallon. The plaintiff testified that on the morning of May 23, 1922, he came to his place of business about ten o'clock; that when he entered the building he found the outer door closed but unlocked; that he entered by merely turning the knob, and went directly upstairs to his office, where he found his employee, Mr. Christian; that the plaintiff entered his inside office, passing through the outer office where Christian was at work; that there was a glass partition between the two offices and a door leading from one to the other; that about fifteen minutes past ten the plaintiff heard footsteps coming up the stairs, and that a man approached Christian, pulling a gun, which he shoved into Christian's stomach, and ordered him to put his hands up quick; that Christian complied, and that then two other men entered, each holding guns; and that the plaintiff was directed to open the door between the inside office and the outer office and to come out into the room where Christian was; that the men with the guns directed plaintiff to put up his hands, which he did; that the plaintiff was then directed to lie down upon the floor, and his hands and feet were tied; that Christian was also tied and bound into the chair in which he was sitting; that one of the men who had entered the office remained on guard, while the others went below; that the plaintiff heard a smashing noise

downstairs, and immediately afterwards heard the alcohol barrels being thrown down and rolled out; that soon after he heard the whir of a motor leaving the premises; that the man on guard remained a few minutes, going through Christian's pockets and finding a bunch of keys, which, upon inquiry, Christian told him were the keys to the front door; that these the man put in his pocket and threatened the plaintiff and Christian that if either of them moved he would kill them; that he then went downstairs and soon thereafter left the premises. The plaintiff succeeded in extricating his hands from the bonds and by means of his penknife severed the bonds from his feet, and from a balustrade over the front entrance summoned help; that a neighbor called a policeman who was unable to enter the building by reason of the front doors having been locked by the robber. The plaintiff then lowered the fire escape and the policeman ascended, and entering the office found Christian still bound; that the police officer then summoned other detectives and policemen from headquarters, who released Christian, after carefully examining the knots in the ropes with which he was tied. The plaintiff testified that on going downstairs he found the lattice doors leading from the entryway into the storage room broken, the lower hinges having been broken and the doors hanging from the top hinges, and all of the fourteen barrels of alcohol which were upon the floor in the morning, gone. Plaintiff testified that he never had been able to obtain any trace of the alcohol taken from him, and which was his property, and that the defendant had not paid him anything upon either policy of insurance. The plaintiff testified that no one, save himself or his employees, would open or close the place of business, and that no others came upon the premises legally, excepting those who had business with the plaintiff. Plaintiff testified that it was the custom to make an inventory every night for governmental purposes, and also for his own satisfaction, and that his place was required to be open for the transaction of business between the hours of nine in the morning and four in the afternoon as a regulation of the Department of Internal Revenue; that it was a part of Christian's duties, when he came in the morning, to turn off the burglar alarm from the office, and at night, when the establishment was closed for the day, the Holmes office was notified and the burglar alarm connected in the office before leaving. The plaintiff admitted that he was examined pursuant to the requirements of the insurance policies after the burglary, and admitted signing and swearing to a statement before a commissioner of deeds wherein he stated that he arrived at his place of business at about nine-forty A. M. on the morning of May 23, 1922, and found his employee

Christian in the office; that the office at that time was open for business, but the door on the main floor, which is really the back part of the building and shut off by two wooden trapdoors, was locked; that these doors were never opened, except when delivering goods; that in the warehouse could be seen through the slats the fourteen barrels of alcohol; that at ten-fifteen A. M. three men came up the stairs to the office and that all the men had guns in their hands; that the plaintiff and Christian were held up and tied with shoe laces and a rope which was in the place. The plaintiff admitted on cross-examination that the only disturbance he saw was the forcing of the lattice doors, the bottom hinges of which had been broken. Plaintiff admitted that in his examination subsequent to the robbery he stated that a place of business having a permit is required to be kept open during business hours so the prohibition officer may come in and examine the stock on hand and the government books, and also the permits that may come for the delivery of goods. The plaintiff admitted that at the time of the robbery he was in his office, which was open for business, and that he was the person owning and conducting said business; that the entry was upon a business day and not upon a Sunday or holiday.

Francis J. Christian, sworn as a witness in behalf of the plaintiff, corroborated in all material details the testimony of the plaintiff. He testified that he came to plaintiff's place of business shortly before nine o'clock in the morning of May 23, 1922; that he unlocked and entered the front door and looked in upon the storage floor through the lattice gates and saw the fourteen barrels of alcohol which he had placed upon the floor the afternoon before, all still there; that he immediately went to his office and signaled the Holmes system, and then busied himself with such duties as were necessary to be performed in connection with the business. Christian corroborated in all details the testimony given by the plaintiff as to the entry of the robbers and the succeeding events until the police arrived. The evidence showed that there was no connection between the lattice doors and the burglar alarm system, the connection being only from the outer doors of the building.

Upon proof of the facts aforesaid the plaintiff rested. The defendant then moved for a dismissal of the complaint as to both causes of action upon the ground that it affirmatively appeared that at the time of the alleged burglary or theft the plaintiff's place was open for business on a business day; that the front door was open, and that the plaintiff and his employee were there ready to transact such business as was required. The court reserved decision upon such motion of counsel for the defendant, and

thereupon the defendant rested. Counsel for the defendant then renewed the motion made at the close of the plaintiff's case upon the ground that it affirmatively appeared that the place was open for business, and upon the further ground that if the place was not open for business, then the alarm system was not connected, which constituted a breach of warranty absolving the defendant from liability upon the policies. The defendant also moved for a dismissal of the complaint upon the further ground that there was no evidence of any visible marks made upon the premises at the place of entry by tools, explosives, electricity or chemicals, and that no cause of action was proven within the terms of the policies. Such motion was denied, and upon motion of counsel for the plaintiff the court directed a verdict in favor of the plaintiff in the sum of $4,215.26, the amount of plaintiff's loss, with interest. The judgment appealed from was entered upon the verdict thus directed.

The appellant asks reversal of the judgment appealed from upon the grounds, *first,* that the risk insured against was burglary occurring when the assured was not open for business; *second,* that there was no entry into the premises by actual force and violence within the terms of the policy; and that the court erred in denying defendant's motion for a dismissal of the · complaint both at the end of the plaintiff's case and after both sides had rested.

I think the judgment must be reversed, and that the court erroneously directed a verdict in plaintiff's favor upon the evidence. The terms of the policies sued upon were clear, unequivocal and unambiguous. Under the policies, the plaintiff was insured for all loss by burglary of merchandise usual to the assured's business, occasioned by any person or persons " who shall have made felonious entry into the premises *by· actual force and violence when the premises are not open* for business, *of which force and violence* there shall be visible marks made upon the premises *at the place of such entry* by tools, explosives, electricity or chemicals." The evidence very clearly shows that the robbers did not make felonious entry into the premises at a time when the premises were not open for business, but that their entrance was made during business hours, when both the plaintiff and his employee Christian were at the place of business and transacting business thereat. The place was clearly open for business at the time of such entry. The evidence further shows that at the time of the felonious entry into the premises, such entry was made without force and violence, and that there were no visible marks of such force and violence made upon the premises at the place of such entry by tools, explosives, electricity or chemicals. The evidence shows that " at

the place of such entry " there were no visible marks of force or violence whatever, but that the robbers entered through the unlocked outer door and passed immediately up the stairs to the plaintiff's office, where the hold-up occurred. The only visible marks of force and violence upon the premises were upon the inside doors leading from the entryway into the grade storage room. Even though it might be said that the breaking of the lower hinges of the lattice doors in breaking into the room where the alcohol was stored was made by force, such visible marks were not at the place of entry into the premises. The evidence did not show any felonious entry into the plaintiff's premises by actual force and violence at a time when the premises were not open for business, of which force and violence there were visible marks made upon the premises at the place of entry by tools, explosives, electricity or chemicals.

Furthermore, at the time of such entry the Holmes burglary system was disconnected, and if it could be said that the entry was made at a time when the plaintiff's establishment was not open for business, then, in disconnecting said burglary system, the plaintiff violated the warranty of the policy that such burglary system was maintained and left connected at the close of each business day while the policies were in force. The law is well settled that in the absence of ambiguity a policy of insurance is to be construed according to the plain and ordinary meaning of its terms which the parties have employed. In *Preston* v. *Ætna Insurance Co.* (193 N. Y. 142) the Court of Appeals, per CULLEN, Ch. J., held that the rule was well settled that contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, the terms are to be taken and understood in their plain, ordinary and proper sense. In the case at bar I find no ambiguity in the terms of the policies in suit. The defendant agreed to insure the plaintiff against loss by burglary where the felonious entry to plaintiff's premises was by actual force and violence *when the premises are not open for business,* and of which force and violence there were visible marks made upon the premises *at the place of entry* by tools, explosives, electricity or chemicals. There was nothing ambiguous about such provisions. The felonious entry which resulted in the theft of the plaintiff's property was made when the premises were open for business, and the evidence shows that there were no visible marks of force and violence upon the premises at the place of entry. The evidence precluded a recovery by the plaintiff under the policies on both grounds. (*Rosenthal* v. *American Bonding Co.,* 207 N. Y. 162.)

The court clearly erred in directing a verdict in plaintiff's favor, and the judgment entered thereon should be reversed, with costs, and the plaintiff's complaint dismissed, with costs.

Clarke, P. J., Finch and Martin, JJ., concur.

Judgment reversed, with costs, and complaint dismissed with costs.