**LEEDS, Inc., v. ÆTNA CASUALTY & SURETY CO.**

Civil No. 1171.

District Court, D. Maryland.

Sept. 23, 1941.

Lauchheimer & Frank and James Morfit Mullen, all of Baltimore, Md., for plaintiff.

William D. Macmillan, of Baltimore, Md. (Semmes, Bowen & Semmes, of Baltimore, Md., of counsel), for defendant.

CHESNUT, District Judge.

In this non-jury case, the plaintiff sues to recover a loss in the amount of $3,-672.90 under the defendant's insurance policy called "a mercantile open stock policy". The coverage of the policy is stated in the first paragraph as follows:

"*To indemnify* the Assured *for all loss by burglary,* of merchandise, furniture, fixtures and equipment, from within the Assured's premises, as hereinafter defined, occasioned by any person or persons making felonious entry into such premises by actual force and violence when such premises are not open for business, of which

force and violence there shall be visible marks made upon the exterior of the premises at the place of such entry by tools, explosives, electricity or chemicals;".

The amount of the loss, compliance with the formal requirements of the policy as to proof, and the payment of the premium, were all admitted by the defendant which, however, promptly denied liability for the claim because the circumstances of the loss were not within the policy coverage. The premises referred to in the coverage clause are defined in paragraph 2 of the declarations, a part of the policy, as follows:

"(a) Location of building containing the premises is 15 W. Baltimore Street, Baltimore, Maryland.

"(b) The portion of the building occupied by the Assured in conducting his business and herein called 'the premises' is Grade floor and most of basement and sub-basement."

In addition to the plaintiff, Leeds, Inc., the assured as named in the policy included others "as their interest may appear", but only the plaintiff was interested in the loss involved.

### Findings of Fact.

From the testimony in the case I find the following facts.

1. The business of the assured was the sale at retail of men's clothing. It had occupied the same premises for some years past.

2. The building, 15 W. Baltimore Street, is a five-story loft building with basement and sub-basement, situated on the south side of W. Baltimore Street, in the heart of the Baltimore business district, and immediately adjoining the premises of The Sun office newspaper building. 15 W. Baltimore Street fronts about 40 feet on Baltimore Street with a depth of even width of about 200 feet running south to the north side of W. Redwood Street which is the first parallel street to Baltimore Street. As stated in the policy, Leeds, Inc., occupied and used practically the whole of the first floor where its stock of men's clothing was contained, and most of the basement of the building and all of the sub-basement. The first floor fronting on Baltimore Street has a common entrance at the street level for all the floors; but there is a slight down grade to Redwood Street where the basement is on a level with that street. The front of the basement on Redwood Street is occupied for a depth of about 40 feet by

another retail store used at the time of the loss involved by Schloss Bros. Adjoining this store there is a doorway entrance to a passage way running into the basement in which is situated a freight elevator and trash chute servicing the upper floors of the building, but the far end of the passage way leading into the main part of the basement is closed by a doorway.

3. The remainder of the whole basement is used by the plaintiff for tailoring work with fixtures and equipment, and the sub-basement is used for storage. In the basement there is a stairway leading to the first floor occupied by the plaintiff. This stairway comes down from the first floor into an office space which has been partitioned off in the basement for the use by the plaintiff's office force. The partition is a rather rough board structure of substantial construction running from the floor to the ceiling of the basement and completely enclosing the office and stairway. There is a door in this partition in the basement which was customarily kept locked at the close of business for the day. It was so closed and locked just prior to the loss.

4. There is a window in the basement opening on an alleyway which, in the form of an L, communicated with the north side of W. Redwood Street. This window has metal shutters on the outside and a metal lattice work on the inside of the basement. The shutters were fastened from the inside and the lattice work also locked from the inside prior to the loss.

5. The loss occurred between 7 and 10 P.M., March 12, 1941. The manager of the store, after learning, as he supposed, that all persons were out of the premises, saw that the exterior doors of the premises occupied, both on Baltimore Street and Redwood Street, and the window and the partition door in the basement to the first floor, were all securely closed and locked before leaving the store about 5:30 P.M. on the night of March 12, 1941. The policeman in making his usual rounds on his beat at 7 o'clock found all the exterior doors securely closed and locked, but on his next round about 10 P.M. found the window in the basement open. The plaintiff's manager was promptly notified, came to the premises, and on inspection found that merchandise consisting of men's clothing of the value of over $4,000 was missing from the first floor; that the lock had been broken on the partition door in the basement on the outside of the door, that is on the basement side and not on the office side. There were visible marks of force on the door showing where the lock had been broken or the door forced open. There were also visible signs of force which had been used to break the hasp holding the lock on the window on the inside and the shutters of the window had been opened from the inside but apparently without force.

6. A day or two later a portion of the stolen merchandise was recovered in an abandoned truck on a Philadelphia street. Police investigation reported that the truck owner asserted the truck had recently been stolen from him. A truck of this nature had been observed in the alleyway near Redwood Street on the night of the loss by some persons employed in a nearby restaurant. After crediting the recovered merchandise less expense, the net loss was $3,672.90.

7. The reasonable inference and conclusion of fact is that the theft or burglary was perpetrated by some person or persons who had concealed themselves in the basement or sub-basement of the premises occupied by the assured before the premises were closed by the manager, and that this person or these persons broke open the partition door into the office and ascended the stairway to the first floor, removed the clothing, carried it down the stairway to the basement and then broke open the basement window from the inside, pushed the shutters outward, and passed out the stolen merchandise to some one who placed it in the truck and drove away with it.

8. There was no evidence in the case sufficient to show that the premises occupied by the assured as defined in the policy were entered by force or violence from the outside, that is, from any exterior entrance to the building either from Baltimore or Redwood Street, or the window facing the alleyway, or from any portion of the first floor or basement or sub-basement not occupied by the plaintiff. In police parlance, it appeared that the theft was an "inside job". There were no visible marks on the *exterior* of the premises of a forceful and violent entry.

### Conclusion of Law.

■ The conclusion of law is that the plaintiff's claim for loss is not within the coverage of the policy and that the defendant is entitled to judgment with taxable court costs.

Under the facts found, the only question is one of law, whether the loss is covered by the policy. This question must be determined in accordance with the statutory and case law of the State of Maryland, as the policy is a Maryland contract, and the jurisdiction of this court depends on diversity of citizenship alone. As there is no applicable statute the decision must be that which, in my opinion, would be rendered by the Court of Appeals of Maryland if it were deciding the case. See Ruhlin v. New York Life Ins. Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290; Erie R. R. Co. v. Tompkins, 304 U. S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L. R. 1487; Klaxon v. Stentor Electric Mfg. Co., 61 S.Ct. 1020, 85 L.Ed. 1477; Griffin v. McCoach, June 2, 1941, 61 S.Ct. 1023, 85 L. Ed. 1481, 134 A.L.R. 1462. It is agreed by counsel for both parties that there is no decision of the Court of Appeals of Maryland interpreting and applying under similar facts the coverage provision of the insurance policy in this case. There are, however, numerous Maryland insurance cases which have announced the principles of construction of similar policies and have applied them in particular cases. Aetna Casualty & Surety Co. v. Gerber, 140 Md. 441, 447, 117 A. 856; Fidelity & Deposit Co. v. Panitz, 142 Md. 300, 120 A. 713; First National Bank v. Maryland Casualty Co., 142 Md. 454, 459, 121 A. 379, 380, 30 A.L. R. 618 (all three burglary insurance cases). In the last cited case the court stated as a well settled rule: " 'Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense.' They 'like other contracts, must receive a reasonable interpretation consonant with the apparent object and plain intent of the parties.' " In Westchester Fire Ins. Co. v. Weaver, 70 Md. 536, 17 A. 401, 18 A. 1034, 5 L.R.A. 478, it was said: "The Court also repudiates the principle of interpretation adopted in some cases, that such contracts are to be construed most strongly against the underwriter, but adopts the sounder rule that the intention of the parties, as gathered from the whole instrument, must prevail." See also New England Mut. Life Ins. Co. v. Hurst, 174 Md. 596, 603, 199 A. 822. Cf. Aschenbrenner v. United States Fidelity & Guaranty Co., 292 U.S. 80, 84, 85, 54 S.Ct. 590, 78 L.Ed. 1137, and Bowles v. Mut. Ben. Ass'n, 4 Cir., 99 F.2d 44, 114 A.L.R. 756, for statement of the applicable federal rule of construction.

The coverage clause in this case is expressed without ambiguity or uncertainty. Upon analysis the coverage is limited to a case where (1) the loss is by burglary from within the insured premises as defined in the policy; (2) occasioned by felonious entry *into such premises* (3) by actual force and violence (4) when such premises are not open for business, (5) of which force and violence there shall be visible marks made upon the *exterior of the premises* at the place of *such entry* by tools, etc. The evidence in the case establishes a loss of merchandise from within the insured's premises, but does not show that there was an entry into such premises *by actual force and violence* when not open for business; and does not establish that there were visible marks upon the *exterior of the premises* at the place of such entry by tools, etc. Counsel for the plaintiff conceded that the force and violence, of which there was physical evidence, of the breaking and opening of the window in the basement *from the inside*, is not sufficient to bring the case within the coverage of the insuring clause; but contends that the visible marks of violence in the breaking of the lock on the doorway of the *interior* office partition in the basement, thereby giving access to the stairway and the first floor of the premises, brings the case within the coverage of the policy, even though there was no force and violence used in the original entry of the premises and no visible marks of violent entry appearing on the *exterior* of the whole premises. That is to say, his contention is that physical evidence of the breaking of an *inner door within the premises* gratifies the policy requirements. I am not able to agree with this contention.

Looking at the policy as a whole, it seems clear enough that its essential purpose was to cover only loss by burglary involving a forcible entry from the exterior of the premises of which there should be visible evidence by marks upon the exterior. The premises are definitely defined in the policy as grade (first) floor of the building and most of the basement and sub-basement. If the premises had been defined in the policy as the first floor only, or even the first floor and the office portion of the basement, the plaintiff's contention would

seemingly be correct; but it is not possible to eliminate from the language of the coverage clause the definition of the premises which includes most of the "basement and sub-basement". And there is no evidence in the case that there was a breaking and entering of any outer door or opening into the portion of the building occupied and used by the plaintiff. On the contrary the only reasonable inference or conclusion of fact from the particular facts found is that the person or persons committing the theft of the plaintiff's merchandise must have entered without force or violence and have concealed themselves in some portion of the basement or sub-basement occupied by the plaintiff and constituting a part of the premises as defined in the policy. And the evidence does not show that this entry and concealment was, as required by the policy, "when such premises are not open for business".

The coverage clause of the policy requires that the loss must have been by "burglary". By the common law, in force in Maryland, burglary had relation only to the felonious entry of a *dwelling* in the nighttime; and the technical criminal law of burglary has not been expanded by statute. Bowser v. State, 136 Md. 342, 344, 110 A. 854; State v. Wiley, 173 Md. 119, 194 A. 629, 113 A.L.R. 1267. It is true that the Maryland statutes also prohibit and punish, under the general caption of "burglary", the unlawful breaking and entry of other buildings, including shops and store houses, during the day or night, with intent to steal therefrom. (Flack's Ann. Maryland Code of 1939, Art. 27, §§ 32 to 37) ; but the Maryland Court of Appeals in the Bowser case, supra, held that one of these statutory extensions of so-called burglary (the principle would seem to apply to all) did not constitute the technical crime of burglary, and was not even a felony. And there are some Maryland cases which hold the insured to criminal law proof of larceny or embezzlement where these words are unqualifiedly used in defining the risk assumed. Williams v. United States Fidelity & Guaranty Co., 105 Md. 490, 66 A. 495; Ledvinka v. Home Ins. Co., 139 Md. 434, 115 A. 596, 19 A.L.R. 167; American Bonding & Trust Co. v. Milwaukee Harvester Co., 91 Md. 733, 48 A. 72. However, I am satisfied that the Maryland Court of Appeals would not by construction restrict the coverage of this policy to a case of common law burglary because it is entirely clear from the policy as a whole, including particularly the definition of the risk assumed, that it was not the intention of the parties to so limit the risk. It is therefore necessary that the term "burglary" as used in this policy must be understood in the wider common concept of the term. The unlawful breaking and entering is, however, an essential element of the term; and generally burglarious entries of buildings are occasioned by force and violence of which there is usually some physical evidence appearing on the exterior of the buildings. It is true that in the field of criminal law there may be certain constructive breakings which are not accompanied or evidenced by physical marks thereof on the exterior of the premises, as where the entry has been accomplished by fraud or collusion, or where the invader has entered from a large chimney, and there are cases which hold that the breaking of an inner door within the premises may constitute the technical breaking which is required in the crime of burglary. 12 C.J.S., Burglary, §§ 6, 7, 8, 9, pp. 671, 672; Calf v. Sun Ins. Office, Law Reports [1920], 2 K.B. 366, 388. Such cases are unusual, but if the instant policy had assumed the risk merely of burglary without qualification, it may be assumed that the loss in this case would have been covered. But the policy expressly limits the coverage to the usual and not the unusual type of burglary, by the express requirement that there shall be visible marks of forcible and violent entry on the exterior of the premises. It is not permissible in construing the policy language to exclude this essential limitation of the coverage. It was so held by the New York Court of Appeals in a fully considered opinion in the case of Rosenthal v. American Bonding Co., 207 N.Y. 162, 100 N.E. 716, 46 L.R.A.,N.S., 561.

Although there are no Maryland cases applying the terms of a burglary policy to facts analogous to those existing in this case, the conclusion of non-liability here reached is quite in accord with decisions in other States and commentary by well known text writers. Couch, Cyl. of Ins. Law, Vol. 5, ss. 1184, 1184a, 1184c; Richards on Insurance, p. 874; Joyce on Insurance, Vol. 4, s. 2821(d). See, also, cases annotated in 41 A.L.R. 846; 44 A.L.R. 471; 54 A.L.R. 467. The cases of Schwartz v. Fidelity & Casualty Co., 120 Misc. 323, 199 N.Y.S. 270, and Lee v. Preferred Accident Ins. Co., 216 App.Div. 453,

215 N.Y.S. 366, are those most analogous to the present case, considering, as we must, in valuing the persuasiveness of other decisions, the similarity of the policy provisions and the facts involved. In both cases the policy provision was substantially like that in the instant case and the facts were quite analogous. In both cases the facts showed no physical evidence of the breaking of an outer door, but it did show the breaking of an inner door. In both cases the insurer was held not liable.

The plaintiff's contention that physical evidence of the breaking of an inner door of the premises is sufficient is sought to be supported by the citation of a number of cases dealing with the forcible breaking of *safes*. For instance, see Vailsburg Motor Corp. v. Fidelity & Casualty Co., 110 N.J.L. 209, 164 A. 408, Id., 111 N.J.L. 114, 166 A. 509; Aetna Casualty & Surety Co. v. Sengel, 183 Ark. 151, 35 S.W.2d 67, and numerous cases annotated or reviewed in 41 A.L.R. 857; 44 A.L.R. 471; and Swanson, Inc., v. Central Surety & Ins. Corp., 343 Mo. 350, 121 S.W.2d 783, 785. In such cases, in varying phraseology, the coverage conditioned liability upon physical evidence on the safe, or, in some cases, on the exterior or outside thereof, of a forcible and violent entry. In some of the cases, under the particular policy conditions, the insurer was held liable where the outside door of the safe had been opened without force, but there was physical evidence of force in opening the inside door. In other cases the insurer was held not liable. An examination of many of these cases, in jurisdictions other than Maryland, shows that they are not all harmonious in the principles applied or the results reached, and they are not persuasive here in view of the difference in the intrinsic nature of the subject matter, and the variant policy provisions. There is an obvious difference between the breaking of outer and inner doors of a store building or premises, and the outer and inner doors of a safe within the premises. It will also be noted on reading some of the opinions in cases dealing with burglary insurance kindred to the kind here involved (not safe cases), in which the insurer has been held not liable, that the coverage in the policy form sued on has (apparently recently) been now further defined by the additional wording that the physical marks of violent entry must appear upon the *exterior* of the premises "at the place of such entry". For comparison of the policy phraseology see Schwartz v. Fidelity & Deposit Co., 120 Misc. 323, 199 N.Y.S. 270, 271; Lee v. Preferred Accident Ins. Co., 216 App.Div. 453, 215 N.Y.S. 366; Swanson, Inc., v Central Surety & Ins. Corp., 343 Mo. 350, 121 S.W. 2d 783; and Maryland Casualty Co. v. Nicetown Dye Works, 3 Cir., 94 F.2d 549, (where under the particular facts the insurer was held liable).

It is further argued for the plaintiff that the construction and application here given to the policy language unnecessarily restricts the coverage. The contention does not seem sound to me whether we are considering the express language of the insuring clause or when we look to the whole structure and contents of the policy. There is obviously a greater risk of loss when it is occasioned by what colloquially may be called an "inside job" than from an "outside job". The policy itself plainly indicates this in paragraph (2) (the exclusion clause) which provides that:

"The Company shall not be liable for loss or damage:

"(1) If the Assured or any associate in interest, or servant or employe of the Assured, is either a principal or an accessory in effecting or attempting to effect the burglary;"

The reference to this clause is not made for the purpose of showing that the particular loss was *excluded,* but only as bearing on the nature of the risk assumed. The evidence does not establish, or even clearly indicate, that the theft of the plaintiff's merchandise was perpetrated or connived at by a servant or employe, although it does very strongly suggest that the thief was familiar with the interior of the premises. The proof does sufficiently show that the thief concealed himself in the premises before they were closed for the day. It would seem obvious enough that the risk of loss was much greater from a theft so perpetrated than from one occasioned only by a breaking in from the exterior of the building. And the policy in itself clearly enough shows that the insurer accepted the risk of a breaking from the exterior only.