PROFESSIONAL METALS MANUFACTURING CO., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT, v. MARYLAND CASUALTY COMPANY, A CORPORATION OF THE STATE OF MARYLAND, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued June 1, 1954—Decided June 21, 1954.

Before Judges EASTWOOD, FREUND and FRANCIS.

*Mr. Edward E. Kuebler* argued the cause for the appellant.

Respondent did not file brief.

The opinion of the court was delivered by

FRANCIS, J. A. D. The issue here is whether the loss suffered by respondent is within the coverage provided by a policy of burglary insurance issued by appellant. A recovery was allowed by the district court judge who sat without a jury, and the carrier appeals.

The assured was engaged in the manufacture of metal furniture at 967 McCarter Highway, Newark, New Jersey.

According to the policy the company agrees, among other things:

"1. To indemnify the assured for all loss of merchandise, furniture, fixtures and equipment, occasioned by burglary which shall mean the felonious abstraction of such property from within the *premises*, by any person or persons making felonious entry therein *by actual force and violence* when the premises are not open for business, *of which there shall be visible marks made upon the exterior of the premises at the place* of such entry by *tools*, explosives, electricity or chemicals."

The word "premises" is defined in the declarations as follows:

"Item 3(b). The portion of the building occupied solely by the assured in conducting his business and herein called the 'premises' is 1st and 2nd floors."

It is apparent from the record that Professional Metals Manufacturing Co. occupied the whole of the second floor but only a portion of the first floor. However, no point is made by the carrier that the declarations are not accurate.

In any event, on August 2, 1952 a fire took place on the first floor of the building in a portion thereof occupied by the New Jersey Display Service, Inc., and which was directly below the assured's premises. As a result the Display Service ceiling and the floor above it were damaged and weakened. Both ceiling and floor gave way on three sides and created a large opening, about 20 feet square, into the assured's premises.

The condition remained unchanged for the ensuing 11 days, and on August 13, 1952 a door leading from the exterior of the building into the premises of Display Service was forced upon by a breaking of the lock. This was not an entrance to the "premises" of the assured. The evidence indicates that after gaining admission the intruders took two long, heavy planks and placed them side by side on an incline extending from the edge of the burned and charred floor of the assured's second floor premises to the floor or to the debris piled on the floor of Display Service. These planks were then used as a ramp for purposes of access to the assured's place of business, the burglars simply going up the ramp and through the open hole in the floor. Then, according to the detective who investigated the crime, the stolen articles were slid down the ramp to the first floor. This was demonstrated by scrape marks down the planks. Thereupon the articles were removed from the building.

The detective also noted that the heavy planks had hit against the edges of the assured's floor as they were being put in place and had left scrape marks on the charred surface. He said that the bright wood could be seen where this contact had occurred.

The trial court concluded that the breaking of the lock on the entrance door of Display Service and the marks of violence resulting therefrom did not constitute a felonious entry into Professional metals premises within the contemplation of the policy. However, he held that a felonious entry had been made therein by means of the planks; that the planks constituted "tools" and the scrape marks on the charred floor satisfied the requirement that such entry be made "by actual force and violence * * * of which there shall be visible marks made upon the exterior of the premises at the place of such entry * * *."

With this conclusion we cannot agree.

The language of the pertinent clause of the contract is plain and unambiguous. *Lee v. Preferred Acc. Ins. Co.,* 216 *App. Div.* 453, 215 *N. Y. S.* 366 (*App. Div.* 1926). In

such a situation, as the former Supreme Court said in *Gusaeff v. John Hancock Mutual Life Ins. Co.*, 118 *N. J. L.* 364 (1937):

"In the absence of restraining statutory provisions, such insurers have the right to limit their liability; and the judicial function of exposition is not to be extended to the imposition of terms not within the plain sense and meaning of the language employed to express the common intention. This interpretative authority must be kept within its legitimate bounds; its exercise is not to be a guise for the foisting of a new contract upon the parties. Such contracts are to be given a reasonable and sensible interpretation consonant with the apparent object of the parties. The natural and ordinary significance of words, both singly and in collocation, is adhered to, unless a special meaning is shown by the context or the circumstances, or the language, viewed as a whole, gives rise to uncertainty or ambiguity."

The type felonious entry agreed upon by the parties in the insurance contract was not accomplished here. Gaining entrance by walking up the improvised ramp and through the 20-foot square opening in the assured's floor was akin to walking through an open door into the premises. Obviously the insurance protection would not be available in such case.

In *Dangler v. National Surety Co.*, 168 *App. Div.* 89, 153 *N. Y. S.* 727 (*App. Div.* 1915), the policy provisions were much the same as in this case. The proof showed that a fire occurred in a loft above that of the assured. The firemen broke the door, smashed the lock and tore the screens of the assured's premises in order to carry a hose through his loft so as to extinguish the blaze on the next floor. An entry gained as the result of this condition was held not to constitute a forcible entry for burglarious purposes.

Similarly, such coverage has been declared inapplicable where the burglars entered the premises merely by turning the knob of the outer door which was closed but unlocked, and then went upstairs, held up the assured and his employee, broke into an inner room and stole certain goods. *Lee v. Preferred Acc. Ins. Co., supra; Rosenthal v. Amer-*

ican Bonding Co., 207 N. Y. 162, 100 N. E. 716, 46 L. R. A. (N. S.) 561 (Ct. App. 1912). The same result was reached where thieves intimidated or drugged the night watchman, thus gaining entrance to the insured premises and then broke into locked stockrooms from which they removed merchandise. Wakem & McLaughlin v. Royal Ind. Co., 241 Ill. App. 427 (App. Ct. 1926); 169 A. L. R. 242; United Sponging Co. v. Preferred Acc. Ins. Co., 97 Misc. 396, 161 N. Y. S. 309 (Sup. Ct. 1916), affirmed without opinion 179 App. Div. 884, 165 N. Y. S. 1116 (App. Div. 1917); Annotation, 169 A. L. R. 224, 235, 238 et seq.; 5 Appelman on Insurance, § 3176, p. 314.

In the light of these cases, the facts before us plainly fail to demonstrate a forcible entry into the assured's premises. The opening was there; it was not necessary to do anything to gain access beyond employing some means of reaching the aperture in the floor. Once at the proper height nothing had to be forced, nothing had to be opened to get into respondent's place of business. There might just as well have been an open trap door in the floor through which the burglar entered.

The other grounds of appeal need not be considered. The judgment is reversed with directions to enter a judgment in favor of appellant.