## Schoenfeld, Appellant, *v.* Royal Indemnity Co.

*Burglary insurance—Forcible entry—Insurance contract—Interpretation—Burden of proof.*

A policy of insurance against burglary, expressly limited to such losses as may be caused by one making a forcible entry or exit evidenced by visible marks upon the premises, does not cover a loss by theft, larceny or mysterious disappearance where there is no evidence of any unlawful entry.

Plaintiff must sustain the burden of showing burglary by some evidence of felonious entry, or evidence from which such entry might be reasonably inferred, and where he failed to produce any evidence of that nature, judgment was properly entered for the defendant non obstante veredicto.

Argued December 20, 1920. Appeal, No. 308, Oct. T., 1920, by plaintiff, from judgment of C. P. No. 3, Phila. Co., June T., 1918, No. 649, in favor of defendant non obstante veredicto, in the case of Max Schoenfeld, trading as Max Schoenfeld & Company, v. Royal Indemnity

300 SCHOENFELD, Appel., *v.* ROYAL INDEMNITY CO.

Statement of Facts—Opinion of the Court. [76 Pa. Superior Ct.

Company. Before PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Assumpsit on insurance contract. Before FERGU-SON, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff in the sum of $1,278.27. Subsequently the court, on motion, entered judgment for defendant non obstante veredicto. Plaintiff appealed.

*Error assigned* was the judgment of the court.

*David Wallerstein,* and with him *Abraham Israel,* for appellant.

*Layton M. Schoch,* for appellee.

OPINION BY KELLER, J., March 5, 1921:

The action was assumpsit on a policy of casualty insurance, known as "burglary" insurance. The jury rendered a verdict for the plaintiff; the court entered judgment for the defendant non obstante veredicto, and plaintiff appealed.

The policy insured against burglary, not theft. The distinction is recognized by statute. The Act of June 1, 1911, P. L. 567, regulating casualty insurance companies, authorizes the incorporation of companies "to insure against loss by burglary or theft, or both." A theft policy is more inclusive than a burglary policy. The former covers loss from any felonious taking; the latter, only such theft as occurs in connection with a felonious entry.

The policy in the present case covenanted "That if ......(a) the property or any part thereof described in Statement 11 of the Application, while contained as specified in the Application and/or the Insured's furni-

ture and fixtures while contained within the premises, shall be lost or damaged by

BURGLARY, and/or

(b) the premises shall be damaged, by

BURGLARY, or ANY ATTEMPT THEREAT,

committed by any person or persons unlawfully making forcible and/or violent entry upon, or exit from, the premises, of which entry or exit there shall be visible marks upon the premises, then the Company will pay or make good to the Insured:

(aa) such loss, to the extent of the then actual cash value of the property so lost, and/or

(bb) such damage, so far as it may fall to be borne by the Insured, but not exceeding," etc.

We are of opinion that, under the wording of the policy, (which was in the form given above), the limiting clause "committed by any person or persons unlawfully making forcible and/or violent entry upon, or exit from, the premises, of which entry or exit there shall be visible marks upon the premises," modifies the word burglary, generally, and therefore applies to item (a), "the property......lost or damaged by the burglary," no less than to item (b), "the premises......damaged by burglary, or any attempt thereat," and affects both items equally; for it would seem to be superfluous if it were held to apply only to burglary damaging the premises, as in such cases there would necessarily have to be visible marks on the premises of such force or violence. It seems rather to be descriptive or definitive of the burglary insured against under the policy, and limits it to such as is committed with forcible or violent entry upon or exit from the premises, of which there shall be visible marks. As it is conceded there were no visible marks of such forcible or violent entry or exit in this case, the judgment of the court below was properly entered for the defendant notwithstanding the verdict.

But, even if, with the court below, we should not go this far, and should restrict the requirement of visible

marks of forcible or violent entry to the item insuring against damage to the premises, caused by burglary, or any attempt thereat, we are nevertheless compelled to sustain the court's action.

The premises insured was the second floor of building 718-724 Arch street, Philadelphia, where plaintiff was engaged in business as a manufacturer of ladies' shirt-waists. A wooden partition eight feet high, extended across the building, about ten feet from the front, dividing it from the rest of the floor, and this in turn was subdivided by similar partitions into a show room, private office and bookkeeper's office. The partitions extended only slightly over half way to the ceiling. The only door to the show room was from the main room. On the afternoon of January 8, 1918, an employee of plaintiff carried five light bundles of silk into this show room, addressed to Trades Manufacturing Company. They were still there when the show room was locked (with an ordinary lock), between 5:45 and 6:10 o'clock that evening. The key to the show room was placed in the safe which was locked and the outside door to the premises was locked by a Yale lock. At 7:45 next morning plaintiff's brother came and opened the building. He was followed five minutes later by a boy named Sussman, who had been employed a day or so before and had worked just one day. The other employees came at eight o'clock. Sussman was seen to wheel a box truck about four feet high from the front of the room to a fire tower at the rear of the building, where it was left standing. Sussman disappeared without collecting his wages, left the city with several companions with whom he boarded and has not been seen or heard of since. At 8:45, plaintiff's brother unlocked the show room and found four of the five packages of silk gone. The evidence did not show the outside windows to have been opened or any forcible or violent entry into the premises, nor was there any disturbance in the show room beyond the abstraction of the four packages of silk.

The policy contained the following conditions, inter alia: "This policy does not cover:......(d) Loss or damage caused by burglary (or by any attempt thereat), if any person having lawful access to the premises is connected therewith either as a principal or as an accessory;"......"Loss or damage......(e) Occurring when the premises are regularly open for business."

These extracts emphasize the fact that the policy is not a theft policy. By paying a higher premium the plaintiff. might have secured a policy which would have insured him against larceny or felonious taking of any kind, but for the advantage of the lower premium rate, he restricted his insurance so that it did not cover every kind of theft but only such as might be embraced under the term "burglary."

The court below rightly held that this term was not confined to statutory burglary, for as the insured premises were not a public building, a church or a dwelling house it was manifest that the parties could not have intended so to limit the contract; that it must be held to apply to a business place or manufacturing establishment; but we can find nothing in the policy indicative of an intention to waive the felonious entry upon the premises always an incident to burglary and its kindred statutory crime covering business establishments, etc.

On this feature of the case the court below in its opinion properly said: "There is no evidence whatever from which it could be found affirmatively that the goods were taken out of the plaintiff's place of business by one who made an unlawful entry. There is no evidence whatever as to when the goods disappeared or how they were removed from the premises. The policy is not a theft policy; it does not afford protection against larceny or mysterious disappearance. It protects only against a felonious removal by some one who made an unlawful entry upon the premises......The plaintiff must sustain the burden of showing the burglary."

We agree with the learned counsel for the appellant that if he had proved a loss by theft, sustained in consequence of a felonious entry upon the premises, the burden of proving that such loss (1) was caused by a person having lawful access to the premises or (2) occurred when the premises were lawfully open for business,—which are specially exempted from the policy—would have been upon the defendant alleging it as a defense: Cooley's Briefs on the Law of Insurance, Vol. 4, p. 3035; Fisher v. Fidelity Mut. Life Assn., 188 Pa. 1; Dougherty v. Pacific Mut. Life Ins. Co., 154 Pa. 385; Western Assurance Co. v. Mohlman, 83 Fed. 811, certiorari denied, 168 U. S. 170; but before the defendant was required to undertake such a defense the plaintiff had to give some evidence showing a felonious entry upon the premises resulting in loss or damage to the plaintiff's property, or from which such felonious entry might be reasonably inferred. This was totally lacking in the present case, and for that reason, no less than the ground first adverted to, the judgment must be affirmed. Judgment affirmed.