## UNION INDEMNITY CO., Inc., v. S. N. KLEIER CO., Inc.

Circuit Court of Appeals, Third Circuit. September 19, 1929.

No. 4022.

McDermott, Enright & Carpenter, of Jersey City, N. J. (James D. Carpenter, Jr., of Jersey City, N. J., of counsel), for appellant.

Carey & Lane, of Jersey City, N. J. (Harry Lane and Robert Carey, both of Jersey City, N. J., of counsel), for appellee.

Before WOOLLEY, Circuit Judge, and GIBSON and McVICAR, District Judges.

WOOLLEY, Circuit Judge. S. N. Kleier Company is a corporation engaged in dressing and dyeing furs. Its plant, located in Jersey City, New Jersey, consisted of two small factories, one a single story brick building and the other a two-story frame building separated by an alley ten feet wide, the rear end being closed by a brick wall and the front end shut off from the street by a solid frame sliding gate, usually open during the day and closed and locked at night. Toward the rear of the alley were swinging metal-covered wooden doors beyond which the alley was used as a passageway between the two structures. A fire escape consisting of a flight of stairs led from the alley near the front to a door and window on the second floor of the frame building.

At night the premises were in the care of watchmen whose duty, among other things, was to ring an A. D. T. burglary alarm every hour. On the night in question—the regular watchmen calls having ceased—the A. D. T. service sent a patrol wagon with policemen to the factory and there found the watchmen trussed and gagged and a large quantity of furs stolen.

On a policy of burglary insurance issued to the Kleier Company by the Union Indemnity Company, the former company brought this suit against the latter and after trial and verdict had the judgment from which the defendant now appeals. As the case must be tried again, the several assignments of error call for separate consideration.

The main provision of the policy of insurance on which the plaintiff relied (with the critical words noted by italics for further discussion) was as follows:

The insurer "does hereby agree to indemnify * * * the assured * * *

"(A) For all loss by burglary of merchandise usual to the assured's business * * * from within the assured's *premises* as hereinafter *defined,* occasioned by any person or persons who shall have made *felonious entry* into the premises *by actual force and violence,* when the premises are *not open* for business, of which force and violence there shall be visible *marks* made upon the premises at the place of such entry by tools, explosives, electricity, or chemicals. * * * *"

The learned trial judge read this paragraph of the policy to the jury, charging that the only issue for them to determine was whether or not the plaintiff had "complied" with its terms. Repeating his instruction that the plaintiff could recover only if it had complied with this provision, and stating that it must prove compliance by the preponderance of the evidence, which means "superiority in weight, influence, or force," and briefly adverting to the evidence of marks indicating forcible entry upon the premises, "both as to the outside door (or gate, concerning which there was no conflict in the testimony) and then as to the window ledge" at the top of the fire escape, concerning which there was a sharp conflict, the judge, after refusing the defendant's motion for binding instructions and refusing to charge any of its eleven requests, submitted the case to the jury.

Though the offense defined by the policy, and however it was committed in the plaintiff's factory, was not burglary in the technical sense, it was so named in the policy and, doubtless, for convenience, was so termed throughout the trial. Continuing, for like convenience, to use the same word, it is certain that there was a burglary, and it is equally certain that the defendant's liability of indemnity extended only to burglary of the kind defined by its contract of assurance. Both parties recognized and the court in effect charged that the kind of burglary assured against was that occasioned by one making "felonious entry" upon the assured's premises "by actual force and violence" of

740

which "marks (were left) upon the premises" at the place of entry. Whether there was such an entry and whether it was evidenced by such marks were sharply contested issues. As there was enough testimony (though of varying weight) to sustain a verdict either way, the learned trial court committed no error in refusing the defendant's motion for a directed verdict. But in submitting these issues we are constrained to find that it fell into several errors which we regard as prejudicial.

■ The first concerns the court's action in construing as matter of law the phrase of the quoted provision of the policy limiting the defendant's liability for loss by burglary to times "when the premises are not open for business" and in holding on its construction that at the time of the burglary the plaintiff's premises were not so open. Ordinarily, the meaning of the expression is plain but in a particular case it is to be determined by what business, if any, was actually being done. In deciding such a question there may be a very wide latitude of judgment such as only a jury, acting under proper instructions, can, on facts found, exercise. When nothing is being done in a plant, manifestly no business is being done, and it is not open for business even though the doors be open. Or, taking the other extreme, when all doors are closed and locked and thereby the public is excluded yet when all machinery is in full operation, a plant may, nevertheless, be open for business within the meaning of the phrase. So, also, a plant, in which there is either a continuous night-and-day operation or intermittent minor operations throughout the night, may or may not be open for business according to the character and amount of work being done. Ordinarily this is for a fact finding tribunal to determine. The evidence on this point was substantially as follows:

One of the watchmen, when held up by the burglars, was operating a drum in which racoon skins were being greased. He testified that while he did not do such work every night, he did it whenever he saw the skins were going bad. There were no general orders for work of this kind but the foreman, whenever he saw that skins needed greasing, would tell him to get it done if he had time. But on the night of the burglary the foreman told this watchman that the skins had to be greased or they would spoil, and it may be that on this occasion the watchman was working under the foreman's orders. Just how he performed the work, other than by sitting at a machine with his back toward the oncoming burglars, is not clear. While, from this limited amount of work in progress it cannot

be construed that the plant was open for business in the sense of being open to admit the outside world, the jury might have found, had the issue been submitted to them, that it was open for business in the sense against which the defendant made its engagement. Certainly the watchman was not at the time performing his duty of watching but on the contrary was at work on a necessary though intermittent phase of the plaintiff's business. What the jury would have found no one, of course, can tell. They might have found that the business of curing skins, which was the plaintiff's business, was actually going on and in that sense the premises were open for business, or they might have found them closed. In any event we are of opinion that the jury should, on these facts, have passed upon the question. In ruling on the question as matter of law and, later, in refusing to charge the defendant's tenth request, we find the court committed error.

■ The defendant by its first request asked the court to instruct the jury in the language of the provision quoted as to the kind of burglary covered by the policy. This the court did. But, continuing, the defendant requested that it also instruct the jury that the plaintiff's premises were limited to those defined by the policy as follows:

" 'Premises,' as used in this policy, shall be limited to that portion of the *interior* of the building designated in the schedule, * * * but shall exclude: * * *

"(b) public entrances, halls and stairways."

By this definition the defendant restricted the area of its liability and designated the place of marks of a forcible entry, thereby protecting itself against liability for an "inside job." The learned trial court not only refused to instruct the jury upon this pertinent limitation of the defendant's contract of indemnity but, quite inadvertently, we apprehend, stated to the jury generally that "there were such visible marks upon the premises," and, continuing, "you heard the testimony, both as to the outside door (gate) and then as to the window ledge, offered by the plaintiff's witnesses."

We hold that the entrance to the alley, with its sliding gate—an exterior of the premises—is a "public entrance" excluded from the operation of the policy and with respect to it the jury should have been so instructed. Moreover, it is possible that the court's allusion to the jimmy marks on the alley gate might have led the jury, in the conflict of testimony as to marks on the window, to conclude, quite erroneously, that evidence of marks on the gate would sustain the

plaintiff's essential proofs of marks on the interior premises under the contract even though proof of marks on the window (a part of the *interior* premises) was lacking, as the defendant contended. The defendant's first request should have been charged.

The court committed no error in refusing to charge the defendant's second request, nor specifically in refusing its third request which explained and, if charged, would have aided in understanding the precise kind of burglary insured against and defined in the paragraph of the policy first quoted. But, reading the defendant's third request in conjunction with its fourth, the situation grows more serious because in the fourth request the defendant asked the court to instruct the jury that the plaintiff was not entitled to recover upon mere proof that the merchandise had been taken from the factory by thieves, but that it could recover only after the plaintiff had proved by the greater weight of evidence that the person who made the felonious entry into the premises did so by actual force and violence leaving visible marks upon the premises (not upon the gate of the alley) at the place he entered. Instead, the instruction was: "Now, there is the issue for you gentlemen to consider, and if you decide that the plaintiff has complied with the terms of the policy * * * both counsel are agreed that the amount payable" is a sum named. There are no terms of the policy which say what the plaintiff must prove in order to recover. The terms of the policy go to the matter of liability, not to the question of how to establish it by evidence. The jury should have been instructed in the substance of the fourth request as to what the plaintiff must prove in order to have a verdict. Failure to charge the substance of this request was error.

The fifth request was a complement to or a reversal in terms of the fourth. Had the fourth been charged, refusal to charge the fifth would not have been error.

So, also, the defendant's sixth and seventh requests are but varied expressions of the more pertinently framed fourth request which, had it been charged, would have dispensed with the sixth and seventh.

The eighth request is similar to the fourth but in order to keep the true issue before the minds of the jurors we think, without finding error, that it might well have been charged. The defendant's ninth request while perhaps pertinent was not a necessary instruction. Therefore failure to charge it was not error.

The defendant's eleventh and final request was to the effect that "if the jury found from the evidence that the plaintiff did not have two private watchmen employed exclusively by the assured on duty within the premises at all times when the premises were not regularly open for business then your verdict must be for the defendant, * * * " continuing with reference to the watchman engaged in greasing skins rather than in watching.

This request had its rise in a provision of the policy that the assured shall have upon the premises at all times when not regularly open for business two watchmen. If the watchman working the skin-greasing drum had been one of the required two watchmen the eleventh request would have been proper, for then there would have arisen a question whether the watchman so engaged had ceased to watch or whether his operation of the machine detracted from his capacity to watch or relieved him of his duty as watchman; in other words, whether there were two watching or only one. But the plaintiff showed by evidence that there were three watchmen on duty of whom the drum worker was one, and as there was no evidence that the other two were doing anything except watch it would seem that the plaintiff had performed its contractual undertaking in that regard. On this state of the evidence it was not error to refuse the defendant's eleventh request.

The judgment is reversed and the case remanded for a new trial to be conducted in a manner not inconsistent with this opinion.