## REMEDIAL FINANCE CORPORATION v. INDEMNITY INS. CO. OF N. A.

No. 22631.   Sept. 18, 1934.

Rehearing Denied Oct. 16, 1934.

Joseph B. Hardy, C. H. Jameson, and H. M. Gray, for plaintiff in error.

Ellis A. Robinson and Quincy J. Jones, for defendant in error.

PER CURIAM.   This is an action commenced by the Remedial Finance Corporation, a corporation, versus the Indemnity Insurance Company of North America, a corporation, in the common pleas court of Tulsa county, Okla., wherein the plaintiff in error alleged that on or about the 20th day of August, 1925, the defendant in error issued to it a mercantile burglary safe policy in the sum of $1,000, and further alleged that while said policy was in full force and effect the plaintiff in error suffered a loss by burglary in the sum of $4.075, and prayed for judgment against the defendant for the sum of $1,000.   Plaintiff in error alleged in paragraph 3 of said petition that between April

19 and April 21, 1930, the safe of the plaintiff in error covered by said policy of insurance was broken into by use of force and violence with tools, explosives, chemicals, or by means the exact nature of which is unknown to plaintiff in error, and that the persons breaking into said safe made felonious entry thereto, leaving marks both on the exterior and the interior of said safe, and abstracted certain property therefrom; the plaintiff in error further alleged that no person connected with the plaintiff in error was implicated either as principal or accessory in the burglary, and that due and timely notice of the loss was made as is provided by the policy.

The defendant in error answered, denying each and all the allegations contained in the petition, and for a further defense alleged that entry into the safe of plaintiff in error was not occasioned by any person or persons making felonious entry therein by actual force and violence, of which force and violence there were visible marks made upon the exterior of the safe by tools, explosives, chemicals, or electricity.

The defendant in error further alleged in its answer that the opening of the safe was effected either by the use of a key or by the manipulation of the lock of said safe, and that by reason thereof the defendant in error was not indebted to the plaintiff in error in any sum whatsoever. And it was upon these issues formed that the trial was had.

After hearing all the evidence in the cause the defendant in error moved the court to instruct the jury to return a verdict for the defendant, which motion the court sustained, and thereupon instructed the jury to return a verdict for the defendant. Exceptions were duly saved by plaintiff in error, and it prosecutes this appeal, claiming this action of the court to be error.

Plaintiff in error has also assigned other grounds of error, but we think they are not well taken, and the sole question for determination in this case is whether or not the court erred in instructing the jury to return a verdict for the defendant in error.

It is admitted by all parties that entry into the safe was not effected by actual force and violence, and that there were no visible marks made upon the exterior of such safe by tools, explosives, chemicals, or electricity.

In order to determine this question it is necessary to refer to the provisions of the policy which is attached to the petition of the plaintiff in error and marked its exhibit "A," the first clause of which is as follows:

"To indemnify the assured for direct loss by burglary occasioned by the abstraction of such property from the interior of any safe described in the declarations and located in the premises, by any person or persons making felonious entry into such safe by actual force and violence of which force and violence there shall be visible marks made upon the exterior of such safe by tools, explosives, chemicals or electricity."

From a reading of this provision of the policy it is clear that the contract of the defendant in error was to indemnity the plaintiff in error for loss by burglary if and when there has been a felonious entry into the safe by actual force and violence and of which force and violence there shall be visible marks made upon the exterior of said safe by tools, explosives, chemicals or electricity.

"Section "G" of paragraph "D" of said policy is as follows:

"D. The company shall not be liable for any loss; (a) if the assured, any associate in interest, servant or employee of the assured or any person lawfully upon the premises is implicated as principal or accessory in effecting or attempting to effect the burglary; (b) unless books and accounts are kept by the assured from which the company can accurately determine the actual amount of loss; (c) caused or contributed to by, or occurring during a fire in the building in which the premises are located; (d) caused or contributed to by invasion, insurrection, war, riot, strike, the action of the elements, water, or explosives (except explosives used by burglars); (e) if effected by the opening of any safe or chest, by the use of a key, or by the manipulation of any lock; (f) unless the doors of all safes and chests are properly closed and locked by a combination or time lock at the time of the burglary or attempt thereat; (g) of money, securities or merchandise contained in any safe that is not burglar proof unless taken from an inner steel burglar proof chest closed and locked by a combination or time lock and opened by the use of tools, electricity, chemicals or explosives as aforesaid after the outer door has been opened in the same manner, or unless such safe is described and insured herein as fire-proof only."

This clause is found under a heading of said policy headed "Hazard Limitations."

The plaintiff in error contends that, under this clause, the safe being admittedly insured as fire-proof only, it is entitled to recover independent of the manner in which the safe was opened, or independent of the fact that there were no visible marks of

force and violence upon the exterior of the safe.

Insurance policies are but simple contracts between the parties, and it is the duty of courts to enforce those contracts as they are written, in the absence of any allegations of fraud or mistake with reference to their execution. Courts do not legislate or make new contracts for the parties, but simply construe and enforce the contracts as made.

Plaintiff in error asked this court to hold that under a clause limiting the liability of the insurance company, the quoted section "G," above, operates to enlarge rather than limit a hazard assumed by the company.

We cannot agree to this construction. It seems plain that this court cannot read into a clause limiting the hazards assumed by the company a meaning that the hazards are to be increased.

Plaintiff in error cites a number of cases to sustain its position, but we think a careful examination of these authorities, except one or two, will disclose they are not in point and do not sustain the position of the plaintiff in error.

Plaintiff in error cites the following cases as sustaining its position: Moskovitz v. Travelers' Indemnity Co., 144 Minn. 98, 174 N. W. 616; Bruner Co. v. Fidelity & Casualty Co., of New York, 101 Neb. 825, 166 N. W. 242; Fidelity & Casualty Co., of New York, v. Sanders, 32 Ind. App. 448, 70 N. E. 167; Rosenbach v. National Fidelity and Casualty Co. (Mo. App.) 221 S. W. 386; Schubach v. American Surety Co. (Utah) 273 P. 974; C. Kalbitzer Packing Co. v. Travelers' Indemnity Co. (W. Va.) 142 S. E. 251; Aetna Casualty & Surety Company v. Sengel Company (Ark.) 35 S. W. (2d) 67; Columbia Casualty Company v. L. W. Rogers Co., 29 Ga. App. 248, 114 S. E. 718; Blacknall v. Maryland Casualty Co. (Tex. Civ. App.) 52 S. W. (2d) 288; Vaudreuil Lumber Co. v. Aetna Casualty and Surety Co. (Wis.) 230 N. W. 704.

In all the cases cited by plaintiff in error, except the case of Aetna Casualty & Surety Co v. Sengel (Ark.) 35 S. W. (2d) 67, and Blacknall v. Maryland Casualty Co. (Tex. Civ. App.) 52 S. W. (2d) 288, the terms of the policies are very different from those of the policy in question. The first case cited by the plaintiff in error, that is, Moskovitz v. Travelers Indemnity Co., construed a policy providing for protection against loss where entry to safe was made by actual force of which there were visible marks on the safe. In this case the lock to the inner door bore marks of violence, and the court held that inasmuch as the policy did not specify which part of the safe shall show evidence of entry by marks of violence, recovery should be sustained. In the case of Schubach v. American Surety Co., the court was passing on exactly the same question, and that is true of the case of Kalbitzer v. Travelers Indemnity Co. and the case of Rosenbach v. National Fidelity & Casualty Co. These and all the other cases cited by the plaintiff in error are therefore not in point for the reason that they are construing policies containing entirely different terms, and almost universally the courts in construing policies containing similar provisions have denied recovery except in those cases where the evidence shows a loss occurring under the terms of the policy. In the Aetna Casualty & Surety Co. v. Sengel, 35 S. W. (2d) 67, the Supreme Court of Arkansas sustained a recovery upon a policy very similar to the policy in question, Justice Kirby dissenting. From a careful reading of this case we do not believe the reasons advanced therein are sufficient to warrant us in departing from the majority rule. In that case there were marks of violence upon the inner door, but none upon the outer door.

In the case of Blacknall v. Maryland Casualty Co., 52 S. W. (2d) 288, the court was construing a policy very similar to the policy in question, and the same is true in the case of Vaudreuil Lumber Co. v. Aetna Casualty & Surety Co., 230 N. W. 704; and in each of these cases a recovery was sustained, but in each of these cases there were visible marks of force upon the interior doors.

From a reading of the policy in this case, it is clear that the insurance company was agreeing to indemnify the plaintiff in error for loss occasioned by the forcible entry into said safe by violence, and that marks of such violence shall be shown upon the exterior of said safe. Can it be said that marks of violence shown upon a wooden compartment in the interior of said safe after the outer door has been opened by the use of a key, or the manipulation of the combination, is a loss occasioned by a forcible entry into said safe by violence and that marks of said violence appear on the outside thereof? Most certainly not. And to hold otherwise is but to make a new contract for the parties.

The policy in question is not a general policy providing indemnity against any and all losses resulting from burglary, but only provides indemnity against such losses as re-

sult from loss occasioned by the means employed according to the terms of the policy. The very language of the policy itself shows clearly that it does not contemplate or cover losses where access is had to the inner part of the safe without the use of tools or explosives. The words, "By any person or persons making felonious entry into said safe by actual force and violence of which force and violence there shall be visible marks made upon the exterior of such safe by tools, explosives, chemicals or electricity," clearly and explicitly exclude liability against the burglary or a theft committed by the working of the combination or when the combination was carelessly left unlocked. The policy was worded to limit its terms to losses occasioned by burglary committed by making entry into the safe by the use of tools or explosives applied directly to the outside of same; it being admitted in this case that no tools or explosives were applied to the outer doors, and that there were no visible marks made upon the exterior of such safe by tools, explosives, chemicals or electricity, then to hold the company liable is, as we have said, but to rewrite the contract the parties themselves have made. How can it be said that any marks of violence or any use of force upon the interior of said safe were an application of force and violence or visible marks of same upon the exterior of said safe? To assert such would be but to assert an absurdity.

Plaintiff in error insists, however, that by reason of paragraph "G" of section "D" of said policy, there is ambiguity in said policy, and that 'insurance policies are to be construed most strongly in favor of the insured and against the company, and that as the object of the policy was to insure the loss of money, the policy be given that construction as will permit recovery where loss occurs.

The unsoundness of this argument is that it assumes that the policy afforded blanket insurance against the loss of money by any burglary, however effected. The plain terms of the policy negative such an intention, and while it is true that insurance policies are to be construed in favor of the insured and against the company, yet this rule has no field of operation unless the policy is ambiguous. Such rule does not permit or warrant courts to remake contracts or to change the face of their plain or explicit terms, and the rule applies only where the contract contains clauses of doubtful, ambiguous, or conflicting terms, or is fairly and reasonably susceptible of two constructions, and if it

appeared from a reading of the policy under consideration that its terms were ambiguous or of doubtful meaning, this court would not hesitate to resolve such ambiguity in favor of the insured. Indeed, the policy should be, if possible, construed to make effective the insurance and not defeat it, but where the language employed is so clear that the indemnity is for loss occasioned by an entry into the safe in a particular manner, we cannot construe the provisions limiting the manner in which entry is to be made out of the policy and entirely disregard these provisions; however great our inclination might be to uphold a policyholder against technical and obscure provisions of a policy designed for avoidance of liability thereunder, we cannot rewrite the contract for the parties to effect this end.

We think the views herein expressed are those announced by the great majority of the courts construing policies with similar provisions and is in harmony with the great weight of authority and the best reason. Blank v. National Surety Co., (Iowa) 165 N. W. 46; Frankel v. Massachusetts Bonding & Insurance Co. (Mo. App.) 177 S. W. 775; First National Bank v. Maryland Casualty Co., 162 Cal. 61, 121 P. 321; Mitchell v. German Com. Accid. Co. (Mo. App.) 161 S. W. 362; Wolf v. Aetna Accident & Liability Co., 170 N. Y. S. 787; Maryland Casualty Co. v. Vexler (Tex. Civ. App.) 66 S. W. (2d) 1081; Northwestern Casualty & Surety Co. v. Barzune (Tex. Civ. App.) 42 S. W. (2d) 100.

Plaintiff in error contends the court erred in refusing to allow it to file its amended reply, which simply set up that the contract of insurance was ambiguous. This did not constitute error. Firemen's Fund Insurance Co. v. Box, 123 Okla. 113, 252 P. 433; Kershaw v. Reynolds, 124 Okla. 174, 254 P. 713; Allen v. Terrell, 126 Okla. 251, 259 P. 268.

For the reasons stated herein, the judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys Cornelius Hardy, V. R. Biggers, and Frank L. Warren in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of the law and facts was prepared by Mr. Biggers, and approved by Mr. Hardy and Mr. Warren, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.