## NATIONAL SURETY COMPANY v. VOLK BROTHERS COMPANY, INCORPORATED.

No. 6655.   Decided May 15, 1935.
Rehearing overruled June 12, 1935.
(82 S. W., 2d Series, 622.)

*Worsham, Rollins, Burford, Ryburn & Hincks*, of Dallas, for plaintiff in error.

No liability was assumed by the policy if the loss was effected by opening the safe by the manipulation of any lock, and the trial found that it was so opened. Northwestern Cas. & Sur. Co. v. Barzune, 42 S. W. (2d) 100; Frankel v. Massachusetts Bonding & Ins. Co., 177 S. W., 775.

*Turner, Rodgers & Winn*, of Dallas, for defendants in error.

MR. PRESIDING JUDGE HARVEY delivered the opinion of the Commission of Appeals, Section A.

This is a suit by Volk Bros. Company, Inc., against the National Surety Company, to recover indemnity, under a burglary insurance policy, on account of the loss by burglary, of a certain sum of money contained in a safe belonging to the Volk Bros. Company. The Surety Company defends on the ground that, under the terms of the policy, said company assumed no liability for the loss that occurred. The trial court gave judgment against the Surety Company, and the Court of Civil Appeals has affirmed that judgment. 63 S. W. (2d) 223.

The "insuring clause" of the policy reads as follows:

"FOR LOSS BY BURGLARY, of property insured, from within the specifically insured portion of the safe, while such safe is located in the Assured's premises (or elsewhere if removed thereto by burglars), occasioned by the felonious abstraction of any of such property, after entry into the safe and also into the portion specifically insured has been effected by force and violence with tools, explosives, electricity, gas or other chemicals, directly thereupon, while all doors of the said safe and the portions specifically insured are duly closed and locked by combination or time locks, of which force and vio-

lence there shall be visible marks on the exterior of both the safe and the portion specifically insured."

In another clause, the safe is designated as "Safe No. 1," and, under that designation, is described by stating the following particulars:—the serial number; the name of the maker; the thickness of "outer door"; the thickness of the steel in "outer door"; that the "outer door" is equipped with combination lock; that the safe is fire proof and contains no burglar proof chest, and is not equipped with any special locking device. In still another clause, it is provided that the insurance granted under the policy shall apply specifically to money and securities (quoting) "In Safe No. 1, inside or outside of any chest."

The burglary in question occurred in the night-time, while this policy was in force. So far as need be stated, the fact findings of the trial court, respecting the burglarizing of the safe, are in the following words:—

"The knobs at the left side of the outer door of the safe were knocked off by force and violence, with tools of some character, by the burglar or burglars. * * * These knobs had no connection with the lock or the opening of the outer door of the safe. The outer door of the safe was opened by manipulation of the lock. On the night before the burglary, the outer door was locked securely. Upon discovery of the burglary, the outer door was unlocked and wide open, and the inner door was likewise open. * * * After the opening of the outer door, a charge of nitro glycerine was applied to the inner door and discharged by an electric fuse, resulting in knocking off the lock completely, and in springing the inner door * * *. That the inner door was opened by force and violence with tools, explosive, electricity, gas or by other chemicals directly thereupon. Having effected the opening of the outer and inner door, as hereinabove outlined, the burglar, or burglars, perpetrated the burglary as hereinabove stated and abstracted the money in the amount stated, and thereafter threw the fuse on the top of certain shelving contained in the store."

The further fact is conclusively established that the morning after the burglary, visible marks of the explosion that forced open the inner door were on the outer surface of that door, but none was on the outside part of the safe.

In view of the conclusion we have reached it becomes unnecessary to consider all the questions raised in argument. A controlling question is raised which involves that provision contained in the insuring clause, quoted above, which calls for

visible marks "on the exterior of the safe." of the force and violence with tools, explosives, etc., by which the entry into the safe is effected. It is to be noted that on the occasion in question, the only visible marks of any force and violence which were on the outside part of the safe following the burglary, were made in connection with the knocking off of certain knobs that were there. These marks may be discarded from further consideration for the reason that they are not marks of force and violence which effected, or in any degree contributed to effect, an entry into the safe. Counsel for the insured insist that the term "on the exterior of the safe," as used in the provision under consideration, comprehends the outside surface of the inner door—the place where visible marks of the explosion were found next morning. The term, as used, is not reasonably susceptible of that construction. The context, including the various policy provisions mentioned in our statement of the case, leaves no room to doubt that the contracting parties regarded the safe as a unit—a single object made up of constituent parts. Nothing appears anywhere in the policy, or in connection therewith, upon which to found a reasonable conclusion that anything else is meant by the term "on the exterior of the safe" than what the words, in the relation they are used, would ordinarily be taken to mean, namely, the outside surface of the safe. The loss that occurred does not fall within the scope of the Surety Company's liability under the policy. Northwestern Casualty & Surety Company v. Barzune, 42 S. W. (2d) 100.

The judgment of the trial court and that of the Court of Civil Appeals are reversed and judgment is here rendered for the plaintiff in error.

Opinion adopted by the Supreme Court May 15, 1935.

(Rehearing overruled June 12, 1935.)