SWANSON, INC., a Corporation, Appellant, v. CENTRAL SURETY & INSURANCE CORPORATION.—121 S. W. (2d) 783.

Division One, November 19, 1938.

*Chas. M. Howell, Floyd E. Jacobs* and *Wm. H. Allen* for appellant.

352

*McCune, Caldwell & Downing, Lynn Webb* and *R. S. Eastin* for respondent.

BRADLEY, C.—This is an action on a burglary insurance policy covering merchandise, etc., in plaintiff's store in Kansas City. Plaintiff sought to recover $8361.15, plus interest, and for penalty and attorney's fees for alleged vexatious refusal to pay. The cause was tried before the court without a jury, and the finding and judgment were for defendant, and plaintiff appealed.

There is no question as to the loss. The chief questions are on the construction and validity of what we may term the *visible marks* at place of entry requirement in the policy; on a so-called declaration of law given at the request of defendant; and because the court made a finding of facts *and* gave declarations of law.

Plaintiff, appellant here, conducted a store at 1116 Baltimore Avenue, Kansas City, and handled ladies' ready to wear, sports

wear, millinery and novelties. The store did not open for business until nine A. M. About six A. M., October 17, 1933, Mark Clay, the store porter, went, as had been his custom, to the store to clean up and get things ready for the opening of the store by nine A. M. At the front of the store were double doors that opened into a vestibule, and from the vestibule double swinging doors opened into the store. The front doors, facing east, were locked with three locks, one a padlock, the others Yale. The porter unlocked the front doors (which unlocking released one of them) and entered, intending to close the released door which, when closed from the inside, would lock with the Yale locks. But before the porter got the door closed, a man ran up and stuck his foot in the opening and threw his shoulder against the released door. This man had a pistol in his hand, and both he and the porter pushed on the door. The porter from the inside was trying to close the door and the man from the outside was trying to enter. The man "put the pistol on" the porter and told him "to stick 'em up" and he did so. Then a second man entered, and shortly a third. One of the men guarded the porter and the other two carried out, at the back door, to the alley, merchandise of the value of $17,495.50. By virtue of a provision in the policy, plaintiff was limited (if recovery could be had) to the amount sued for. When the robbers were ready to leave they tied up the porter, but he soon released himself and notified the owner and the police.

The policy provision relied upon by defendant to support the contention that it is not liable is as follows: "To indemnify the assured for all loss by burglary, of merchandise, furniture, fixtures and equipment, from within the assured's premises as hereinafter defined, occasioned by any person or persons making felonious entry into such premises by actual force and violence when such premises are not open for business, *of which force and violence there shall be visible marks made upon such premises at the place of such entry by tools, explosives, electricity or chemicals. . . .*" (Italics ours.)

It is contended by defendant that the visible marks requirement is a limitation on liability, and that the evidence does not show that there were visible marks made at the place of entry by tools, etc., and that absent such evidence defendant is not liable. On the other hand plaintiff contends that the visible marks requirement is not a limitation on liability, but is an attempt to limit and determine the *character* of evidence to show liability. Also plaintiff contends that the controverted provision is ambiguous, and invokes the rule that where such is the case the policy will be construed most favorably to the insured. It appears, from the declarations of law given at the request of defendant and from the findings of facts, that the trial court was of the opinion that the visible marks requirement was a limitation on liability and not an attempt to limit and determine the character of evidence to show liability. Also, the court found that

there were no visible marks at the place of entry as by the policy required.

Defendant cites and relies upon the following cases to support the construction contended for by it. [Rosenthal v. American Bonding Co., 207 N. Y. 162, 100 N. E. 716, 46 L. R. A. (N. S.) 561; American Surety Co. v. Southern Oil Stores, 24 Ala. App. 114, 133 So. 298; Lee v. Preferred Accident Ins. Co., 215 N. Y. Supp. 366; United Sponging Co. v. Preferred Accident Ins. Co., 161 N. Y. Supp. 309; Abt. v. National Surety Co., 230 Ill. App. 242; Komroff v. Maryland Cas. Co., 105 Conn. 402, 135 Atl. 388; Remedial Finance Corp. v. Indemnity Company of N. America, 169 Okla. 199, 36 Pac. (2d) 858; Schoenfeld v. Royal Indemnity Co., 76 Pa. Super. Ct. 299; National Surety Co. v. Volk Bros., 125 Tex. 398, 82 S. W. (2d) 622; Wakem & McLaughlin v. Royal Indemnity Co., 241 Ill. App. 427; Imperial Trading Co. v. Maryland Cas. Co. (La.), 153 So. 473; Frankel v. Massachusetts Bonding & Ins. Co. (Mo. App.), 177 S. W. 775; Union Indemnity Co. v. Kleier Co. (C. C. A.-3rd), 34 Fed. (2d) 738.]

In the Lee, Remedial Finance Corporation, Wakem & McLaughlin, Imperial Trading, and Union Indemnity Company cases, supra, the visible marks requirement was about the same as in the present case. In all the cases cited and relied upon by defendant it was held, where the question was raised, that the visible marks requirement was a limitation on liability. In the Rosenthal case there was a specific provision so providing as follows: "The company shall not be liable (1) unless there are visible marks upon the premises of the actual force and violence used making entry into the said premises or exit therefrom."

Of the cases cited, supra, and relied upon by defendant, the following concerned the burglary of safes, and the policy required, as a condition of liability, visible marks on the *outside* of the safe: The Frankel case, National Surety Co. v. Volks Bros., The Remedial Finance Corporation case, the Komroff case, and American Surety Co. v. Southern Oil Stores. All these cases cited by defendant were subsequent to the Rosenthal case, and that case was cited in most of the cases relied upon.

Blacknall v. Maryland Cas. Co. (Tex. App.), 52 S. W. (2d) 288, is cited by plaintiff as supporting the contention that the *visible marks* requirement is not a limitation on liability. In that case the policy insured: "Against loss or losses, not exceeding three hundred ($300) dollars in the aggregate, of money or property belonging to the assured (including damage to any safe) through the forcible opening upon the premises, when not open for business, of such safe, effected by means of explosives, tools or chemicals, of which forcible opening there shall remain visible marks upon the *exterior* of such safe while such safe is duly closed and locked by at least one combination or

time lock." (Italics ours.) The trial court found that there were no visible marks on the *exterior* of the safe, but that there were such marks "upon the doors to the interior locked compartment," and found for the defendant. The Court of Civil Appeals reversed the judgment, and rendered judgment for the plaintiff. In the opinion it is said: "This provision (visible marks) is in the nature of a trick clause which is often found in such contracts, and is obviously designed to afford a highly technical means of escape from liability. It will be construed most strongly against the insurer and liberally in favor of the plain purpose of the contract which was to protect the insured against loss through burglary or robbery by force." But the Supreme Court of Texas in the Volks Bros. case, supra (82 S. W. (2d) 622, which was a safe case, held that the *visible marks on the exterior* requirement was not met by such marks being on an inner door.

The Frankel case (177 S. W. (Mo. App.) 775) was a *safe* case. The policy indemnified the insured against direct loss, "by burglary, of money in current use, bullion, securities, uncanceled United States government post office or revenue stamps, in consequence of the felonious abstraction of the same from the safe, 'by any person or persons who shall have made entry into such safe or safes by the use of tools or explosives applied directly to the outside thereof.'" The holding in the Frankel case is reflected in headnote 1 (177 S. W. 775): "Under a burglary insurance policy against loss of money and stamps taken from the safe by any person who shall have made entry into the safe by the use of tools or explosives applied directly to the outside thereof, there can be no recovery where the outer and middle doors of the safe were opened without tools or explosives, and then the inside frame containing the cash box was taken out and the cash box was broken open."

Rosenbach v. National Fidelity & Cas. Co., 204 Mo. App. 145, 221 S. W. 386, was a safe case. The policy insured against "loss of money or property from a combination fire and burglar-proof safe or fire-proof safe with burglar-proof chest unless the same shall have been abstracted from the steel or so-called burglar-proof chest contained within the safe, after entry into said chest effected by the use of tools or explosives directly thereupon."

The manner of entry into the safe was agreed upon as follows: "The outside door, which locked with a combination, had been opened without the use of tools or explosives thereon; the plaintiff had either neglected to lock the door by the combination (contrary to his usual custom) or the burglars were able to work the combination; inside the door last mentioned was a steel door which locked with a key, and this lock was driven through the door by the use of tools and the door was opened in this way. Still farther inside the safe was a

small money chest with a steel door which locked with a key lock.
This lock was driven through the door by the use of tools and the door
was then opened. After the outer door with the combination lock
had been opened without the use of tools or explosives, and the inner
safe door was opened by the use of tools, and the money chest was
opened by the use of tools, there was stolen from the money chest
$20 in silver change, halves and quarters; $50 in one dollar bills
and $380 made up of five, ten and twenty dollar bills.''

On the theory that the policy in the Rosenbach case was ambigu-
ous (as we construe the opinion) a judgment for the defendant in
that case was reversed and the cause remanded.

As we view the present case, we rule that the visible marks re-
quirement in the policy was intended to be and is a limitation on
liability, and we further rule that the provision is not ambiguous.
It may be a trick provision as characterized by the Texas Court,
but as has been said many times, absent ambiguity, there is no room
for the rule that insurance contracts will be construed most favor-
ably to the insured.

Is the visible marks requirement an attempt to prescribe the *char-
acter* of evidence necessary to show liability, and void as against pub-
lic policy? To support this theory plaintiff relies chiefly upon Rol-
lins v. Business Men's Accident Assn., 204 Mo. App. 679, 220 S. W.
1022. That case was a suit on an accident insurance policy. The
policy provided: ''If the insured received bodily injuries, fatal or
otherwise, from the discharge of firearms, . . . the claimant shall
establish the accidental character of the injury by the testimony of
at least one eyewitness to the accident other than the insured him-
self, and in the event of failure so to do .. . . the liability of the
association shall be limited to one-tenth of the amount otherwise pay-
able.'' This clause was held to be void, because it infringed upon
the province of the court to determine the character of evidence that
might be offered. Having reached the conclusion in the present case
that the visible marks requirement is a limitation on liability, and
that there is no ambiguity, it necessarily follows that we would rule
that such requirement was not an attempt to prescribe the character
of evidence necessary to adduce in order to show liability, and we
so specifically rule.

At the close of the case the court, at the request of defend-
ant, gave five declarations, called declarations of law, *and* made a
finding of facts. Plaintiff contends that the so-called declaration *a*
constitutes reversible error, and that the giving of declarations of
law *and* making a finding of facts constitute reversible error, as ap-
pears, supra. It is sufficient to say that the evidence on the issue of
there being visible marks at the place of entry was conflicting. Plain-
tiff contends that the so-called declaration of law *a* is the same, in

effect, as is the usual peremptory declaration. If such be the case then the giving of declaration *a* constitutes error, as we shall see presently.

Declaration *a* follows: "The court declares the law to be that the plaintiff is not entitled to recover in this action, and the verdict and judgment must be for defendant, *as* plaintiff has not proved by the greater weight of the credible evidence that the person or persons who made the felonious entry into the premises did so by actual force and violence, of which force and violence (i. e. the force and violence used in making entry) there were visible marks made upon such premises at the place of such entry by tools, explosives, electricity or chemicals." (Italics ours.)

As submitted, the word *if* was used instead of *as* in declaration *a*, but the court changed *if* to *as*.

To support the contention that the giving of declaration *a* constitutes error, plaintiff cites Central States Sav. & Loan Assn. v. United States Fidel. & Guar. Co., 334 Mo. 580, 66 S. W. (2d) 550; Butler County v. Boatmen's Bank, 143 Mo. 13, 44 S. W. 1047; Crossett v. Ferrill, 209 Mo. 704, 108 S. W. 52; Vincent v. Means, 184 Mo. 327, 82 S. W. 96.

In Central States Sav. & Loan Assn., supra, it was held that in a law case tried without a jury, it was error to give a peremptory declaration when the evidence on the issues is conflicting, and earlier cases to the contrary were overruled.

If the present case had been before a jury, declaration *a*, without doubt, would have been reversible error, because it would at least have been an unwarranted comment on the evidence, even though it were construed as something other than a peremptory instruction. The finding of facts appears in the record *before* the declarations, but whether, in fact, they came in that order, we do not know. It does appear that at the close of the whole case defendant offered and the court refused a peremptory declaration in the usual form. And in the brief defendant says that the sequence was the refusal of its peremptory request for a directed verdict, the finding of facts, and the declarations. Having refused defendant's peremptory request at the close of the case, it is unreasonable to say that declaration *a* was intended to be peremptory. If the finding of facts were *before* the giving of the declarations, then there was no occasion, under the simple issues here, for declarations, because the finding of facts discloses what was in the mind of the court, and the theory upon which the finding for defendant was based. There were four separate paragraphs in the finding of facts, but the last concerned the claim of vexatious refusal to pay, and is not of consequence here. The first paragraph recites, among other findings, that the court sitting as a jury finds "that there were no visible marks of any force and vio-

lence used to effect entry made upon such premises at the place of such entry by tools, explosives, electricity or chemicals." The second paragraph recites the finding on the visible marks issue in practically the same language as in the first. The third paragraph found that none of the persons who feloniously entered the store "used his pistol as a wedge or the like to prevent plaintiff's employee from closing the door to its locking point, and (that) no marks were made upon the premises by said pistol."

In declaration a it will be noted that the court declared the law to be that plaintiff was not entitled to recover as plaintiff has not proved, etc., that "there were visible marks made . . . at the place of such entry by tools, explosives, electricity or chemicals." Monnig v. Easton Amusement Co. (Mo. App.), 27 S. W. (2d) 495, was an action for rent, and was tried before the court without a jury. The court gave, for the defendant, what was designated as "declaration of law No. 3," as follows: "The court finds from the evidence in this case that the heating plant which was in the premises at the time of the making of the lease thereafter became inadequate to heat the premises through ordinary wear and tear." Of this so-called declaration of law the court said: "While this is denominated a declaration of law, and while it appears in the abstract among defendants' given declarations of law, obviously it is a finding of fact; and it is none the less of such character because it happens to appear labeled as a declaration of law, since its true import must be determined by its contents rather than by its caption," citing Platte Valley Bank v. Farmers' & Traders' Bank (Mo. App.), 14 S. W. (2d) 12.

Kansas City Wholesale Gro. Co. v. McDonald, 118 Mo. App. 471, 95 S. W. 279, was in replevin to recover possession of a stock of merchandise, fixtures, etc. The cause was tried before the court without a jury. The court found for the defendant and the plaintiff appealed. In what was termed the finding of facts was this: That "there is no evidence showing in what county Boyd (mortgagor of the property) lived in at the time of the execution of the mortgage." Of this finding the court said: "The finding in question on its face shows that it was the result, not of the action of a trier of fact in weighing evidence, but of the court in determining as a matter of law that no evidence at all had been adduced that tended to support an essential fact. The finding should be treated rather as a conclusion of law than as an issue of fact settled by verdict."

So it appears that whether a so-called declaration of law or finding of fact is what it purports to be depends upon its contents and not its label. And in the present case, tried without a jury, we think it more reasonable to say that the so-called declaration a is no more than a finding of fact that "there were no visible marks made upon such

premises at the place of such entry by tools, explosives, electricity or chemicals" as required by the policy, and we so rule.

Was reversible error committed in giving declarations of law *and* making a finding of facts? In Suddarth v. Robertson (Div. 1), 118 Mo. 286, l. c. 293, 24 S. W. 151, this appears: "In these actions at law, tried by the court without a jury, where the evidence is conflicting, the court should give and refuse instructions the same as when trying the case before a jury. The instructions being given, the finding may be general for the plaintiff or defendant. This court is then able to see on what theory of law the court proceeded, and we are at the same time able to see how the court found the facts. This course, or that pointed out (finding of facts) by Section 2135, Revised Statutes 1889 (now Sec. 952), should be pursued."

In Kostuba v. Miller (Div. 1), 137 Mo. 161, l. c. 173, 38 S. W. 946, it was said: "In the trial of actions at law by the court without a jury, in order that the theory of law upon which the case was tried may be made apparent, as well as how the court found the facts, the court may either give or refuse instructions the same as when trying the case before a jury, or pursue the course pointed out by Section 2135, Revised Statutes 1889 (now Sec. 952). [Suddarth v. Robertson, 118 Mo. 286.] *The court, of course, ought not to pursue both courses because they are inconsistent,* and is not required to pursue either unless requested, but may make a general finding which is equivalent to a declaration of law upon all the facts found." (Italics ours.)

And in Falvey et al. v. Hicks (Div. 1), 315 Mo. 442, 286 S. W. 385, l. c. 390, is this: "It is true that, in law actions (as distinguishable from purely equity actions) tried by the court without the aid of a jury, the court should, when requested, either give or refuse instructions (commonly called declarations of law) or state in writing the conclusions of facts found separately from the conclusions of law, but should not pursue both courses," citing the Suddarth and Kostuba cases, supra.

The Suddarth case, supra, was in ejectment and was tried without a jury. There was no finding of facts. The judgment was reversed and the cause remanded because of the refusal of two declarations or instructions asked by the plaintiff. The Kostuba case, supra, was to recover for money received by a daughter from her father, and the court, at the request of the daughter (defendant) gave declarations of law *and* made a finding of facts. Judgment went against the daughter and she appealed. Having requested declarations *and* a finding of facts, she was, the court said, in no position to complain, hence the point was not ruled.

The opinion in the Kostuba case was written by Judge BRACE and all concurred. But Judge BARCLAY filed a memorandum in which he said: "While concurring in affirming the circuit court judgment, it

is not my intention to be understood as intimating that a party to an action at law (tried by the court alone) may not properly ask for specific findings of fact under Section 2135, Revised Statutes 1889 (now Sec. 952); and also submit requests to the court (under Sec. 2188, now Sec. 967), for declarations (in the nature of instructions) on any proposition of law applicable to the facts.''

In the Falvey et al. case, supra, plaintiffs proceeded under what is now Section 856, Revised Statutes 1929 (Mo. Stat. Ann., sec. 856, p. 1131), to have title to certain real estate vested in them. Declaration of law were given, but there was no separate finding of facts. It is apparent that neither the Suddarth, Kostuba, or Falvey case holds that it is reversible error to give declarations of law *and* make a finding of facts. No such situation was presented in either of these cases, except in the Kostuba case, and in that case it was held that the complaining party was in no position to raise the question. Our attention is called to no case and we find no case holding that it is reversible error to give declarations of law *and* make a finding of fact.

We cannot appreciate how the mere giving of declarations of law *and* making a finding of facts, could be of prejudice to either party. It is trite that declarations serve the purpose of showing on what theory the trial court proceeded, and the same might appear from a finding of facts, but not so likely as in declarations. We do not think that giving declarations *and* making a finding of facts constitute reversible error, and so rule.

It is claimed by plaintiff that the finding of facts is not sufficient. The point is that the finding states only conclusions. We have (supra) referred to and quoted from the finding of facts, and we do not deem it necessary to set out in full.

Section 952, Revised Statutes 1929 (Mo. Stat. Ann., sec. 952, p. 1225), provides that, upon request in the trial (in a law case) of a question of fact by the court, "the court shall state in writing the conclusions of facts found separately from the conclusions of law.'' A statutory finding of "facts . . . should embrace all the material facts bearing on the issues involved and should set them out in detail, and not merely state conclusions or inferences therefrom.'' [McBride v. Mercantile-Commerce Bank & Trust Co., 330 Mo. 259, 48 S. W. (2d) 922, 1. c. 929, and cases there cited.] The facts in the present case are simple and in no way complicated, and we think that the finding is sufficient.

The judgment should be affirmed, and it is so ordered. *Ferguson* and *Hyde, CC.* concur.

PER CURIAM:—The foregoing opinion by BRADLEY C., is adopted as the opinion of the court. All the judges concur, except *Lucas, J.,* not sitting.