Ihor SYDOR and Olga Sydor, Plaintiffs,

v.

Patricia HARRIS, Secretary, Department of Housing and Urban Development, Defendant.

No. 77 C 1591.

United States District Court, E. D. New York.

Nov. 26, 1979.

Richard M. Kraver, New York City, for plaintiffs.

Edward R. Korman, U. S. Atty., E. Dist. of New York, Brooklyn, N. Y. by Jan F. Constantine, Asst. U. S. Atty., Brooklyn, N. Y., for defendant.

## MEMORANDUM OF DECISION

NEAHER, District Judge.

Plaintiffs in this civil action seek to recover losses allegedly sustained as a result of a burglary of their apartment on May 7, 1976. They claim under a residential crime insurance policy issued to them pursuant to Section 602(d) of the Housing and Urban Development Act of 1970, P.L. 91–609, redesignated as Part C and §§ 1231–34 of the Urban Property Protection and Reinsurance Act of 1968, *as amended*, 12 U.S.C. §§ 1749bbb–10a *et seq.* Defendant refused to compensate plaintiffs, relying upon a limitation of recoverable losses to those resulting from burglary as defined in the federal crime insurance policy and established by federal regulation, 24 C.F.R. § 1933.5. Burglary therein

> "means the felonious abstraction of insured property from within the premises by a person making felonious entry therein by actual force and violence, evidenced by visible marks upon, or physical damage to, the exterior of the premises at the place of such entry."

Plaintiffs contend that testimony and other evidence adduced at the trial held in this matter are sufficient to raise an inference that there was a felonious abstraction within the meaning of the policy's limitation and that they are therefore entitled to judgment in the sum of $1,900.00 with interest. The following constitutes the court's findings of facts and conclusions of law pursuant to Rule 52, F.R.Civ.P.

Plaintiffs testified that when they returned home from work on May 7, 1976, at approximately 6 p. m., Mr. Sydor inserted the key into the lock in the front door of

the apartment, but the door opened by itself. They entered and found their possessions scattered around the apartment. Plaintiffs called the police who came and after a brief investigation completed a report, which noted that the complainants stated that the entry to the apartment was apparently accomplished by "lockpicking." There were no broken windows or other signs of entry.

Sydor testified that only he and his wife possessed keys to the apartment and that when they left the apartment in the morning, he had locked the door. He also testified that upon inspection of his front door after the burglary, he noted scratches on the cylinder of the lock which he had not observed before. He thereafter called a locksmith who came and installed a new cylinder the following day. The original cylinder was preserved in plaintiffs' custody until they delivered it to their attorney in this action. The cylinder was admitted into evidence as Plaintiffs' Exhibit 5.

Robert Kaplan, the licensed locksmith who removed plaintiffs' cylinder after the burglary, testified that a lock such as plaintiffs can be opened without a key by raking the pins with a "picking instrument." He "assumed" entry was made by picking if there were no open windows or the like. On cross-examination, he testified that the marks on the cylinder face could have been made by any metal object, such as a key, knife, screwdriver, etc., or by a lockpick.

In December 1976, plaintiffs submitted a claim to the insurance agency responsible for their policy. They were later visited by an adjuster who took a written statement, which plaintiffs signed. See Plaintiffs' Exh. 12. In this statement, plaintiffs purportedly stated to the adjuster that there were "no signs of visible entry." The meaning and effect of this statement were disputed at trial. Sydor testified that the insurance adjuster, Thomas Harbin, used his own language in phrasing the statement, and although plaintiffs signed it, they objected to various statements and only signed because the adjuster said they would be paid on the claim if they did.

Sydor also claimed that the statement that there were no sign of visible entry was only intended to indicate there were no broken windows, and that he did show Harbin the marks on the lock. Defendant refused to pay on the claim by letter dated November 1, 1976, relying on the limitation of recovery to loss by forcible entry evidenced by visible marks.

Mrs. Sydor testified substantially along the lines outlined above. She did, however, state that she was not responsible for the entry on the police report that the lock had "apparently" been picked, although she signed the report.

The defense case consisted of the testimony of Thomas Harbin, who said that the statement he took from the Sydors was signed after they read it and were told to make any necessary corrections. Harbin also testified that he had no motive to disallow the claim since his fee for the investigation was only $42 whereas his fee, if he settled the claim, would have been $250.

In 1968, Congress enacted the Urban Protection and Reinsurance Program, 12 U.S.C. § 1749bbb et seq., which was intended to offer federal incentives to the States and insurance industry to deal with the problem of property insurance and its excessive cost. The civil disturbances and riots that occurred in cities from 1964 through 1968 had caused insurers to withdraw from certain areas or increase premiums beyond the means of residents of those areas. The 1968 Act was aimed at remedying some of these problems. 1970 U.S.Code Cong. & Admin.News, pp. 5582, 5505–06.

Congress' dissatisfaction with the effectiveness of the 1968 Act resulted in the enactment of certain amendments in 1970, which authorized the Secretary of Housing and Urban Development to

"make crime insurance available at affordable rates within such State [as he determines a critical market unavailability for crime insurance exists] through the facilities of the Federal government. Such insurance shall be provided upon such terms and conditions, and subject to such deductibles and other restrictions

and limitations, as the Secretary deems appropriate . . . ." 12 U.S.C. § 1749bbb–10a(b).

Under this Act, the Secretary is accorded broad and flexible authority in providing lines of property insurance and wide discretion in promulgating terms and conditions of such insurance. See 1970 U.S.Code Cong. & Admin.News, pp. 5582, 5607–08. One such condition is the limitation of recoverable losses to those resulting from burglary as defined above. See 24 C.F.R. § 1933.5.

The question presented here is whether plaintiffs have met their burden of proving by a preponderance of the evidence that their loss resulted from a felonious abstraction accomplished by a felonious entry "by actual force and violence, evidenced by visible marks upon, or physical damage to, the exterior of the premises at the place of such entry." To put the matter in the stark terms established by the evidence, we must determine whether the opening of the lock without evidence of marks not also consistent with ordinary use satisfies the requirements of the insurance policy.

■ The parties have not cited, nor has the court's research disclosed, any authority interpreting a similar limitation contained in an insurance policy issued under the federal crime insurance program. Thus, in reaching a decision on the issue presented, the court must determine whether the government's desire to limit its liability in these circumstances is consistent with the intent of Congress in authorizing the federal government's participation in efforts to provide insurance in areas where it would otherwise be unavailable. Although Congress most certainly intended that the government should fill the breach, it could not have intended that the government insure against all risks, and this authority to condition or limit coverage is explicitly provided by statute. We therefore conclude that the government when it acts under the federal crime insurance act is in no better— or worse—position than a private insurer in similar circumstances. The propriety of the government's interpretation of its obliga-

tions under contract therefore can be measured against that established in cases involving private loss insurance and construing similar provisions in like circumstances.

■ Since provisions requiring burglary to be evidenced by visible marks are reasonable limitations on liability, 10 Couch on Insurance 2d § 42:128 (1962); *Swanson Inc. v. Central Surety & Insurance Corp.*, 343 Mo. 350, 121 S.W.2d 783 (1938); *United Sponging Co. v. Preferred Accident Insurance Co.*, 97 Misc. 396, 161 N.Y.S. 309 (Sup. Ct.App. Term 1916), aff'd, 179 App.Div. 884, 165 N.Y.S. 1116 (1st Dept. 1917); *Rosenthal v. American Bonding Co. of Baltimore*, 207 N.Y. 162, 100 N.E. 116 (1912), plaintiffs/insureds have the burden of proving that the burglary was accomplished by forcible entry evidenced by visible marks when such a condition is imposed by policy. *Union Indemnity Co. v. S. N. Klier Co.*, 34 F.2d 738 (3 Cir. 1929); *Spokane Interstate Fair Ass'n v. Fidelity & Deposit Co. of Maryland*, 15 F.2d 48 (9 Cir. 1926); *C. F. Mueller Co. v. Maryland Casualty Co.*, 341 F.Supp. 286 (D.N.J.1972).

Plaintiffs testified that the door to their apartment was locked in the morning of May 7, 1976, when they left. They also testified that no other person had a key to their apartment. Their testimony that their possessions were strewn about the apartment and that they had incurred loss of property was also credible. The remaining question then is whether they have proved that the entry was by force evidenced by "visible marks."

As an abstract matter, there is nothing remarkable in the proposition that lockpicking—if entry was gained in that manner— constitutes a forcible intrusion into one's premises. An entry accomplished by stealth by means of lockpicking or "jimmying" a door or window appears every bit as forceful an invasion of one's property as breaking down a door with a crowbar, although the insurance cases appear uniformly to the contrary. See, e. g., *Offutt v. Liberty Mutual Insurance Co.*, 251 Md. 262, 247 A.2d 272 (1968); *Fidelity and Deposit Co. of Maryland v. Spokane Interstate Fair*

*Ass'n*, 8 F.2d 224 (9 Cir. 1925). Yet, the limitation in the insurance policy is not written merely in terms of force but requires visible evidence of that force, no doubt to protect the insurer against fraud or simple negligence of the insured. The insurer does not protect against all risks but only those bargained for by contract and sets premiums accordingly.

 Although plaintiffs urge the court to construe the provisions against the draftsman insurer, the plain language of the policy demonstrates a clear intention that visible marks attest to the actual intrusion. See *Swanson Inc. v. Central Surety & Insurance Corp., supra; Rosenthal v. American Bonding Co. of Baltimore, supra.* Thus, plaintiffs must demonstrate not only that the marks exist but also that they occurred during the forcible intrusion. Here the proofs fell far short of establishing that the marks on the cylinder had their origin in a forcible entry by lockpicking, assuming such to be forceful for these purposes. While plaintiffs testified they had not seen marks on the cylinder until after the burglary, their expert witness, the locksmith, could only assume from examination of the cylinder that the entry was by lockpicking and did not state that the marks observed were the result of any lockpicking. The court's own examination of the lock cylinder in evidence revealed only slight scratches in and around the keyhole which could as well have been caused by ordinary usage as by the assumption of lockpicking. Thus no preponderant inference can be drawn from the evidence.

In these circumstances, the court finds and concludes that plaintiffs have failed to meet their burden of proving entry by actual force and violence, evidenced by visible marks upon the exterior of their apartment. To find otherwise would permit recovery of loss resulting from lockpicking alone, upon a mere showing that the exposed face of the cylinder had marks on it which were also consistent with ordinary usage. It is clear the government did not bargain for such a risk in issuing the crime insurance and would be without protection against claims based on fraud or negligence if such a showing were deemed sufficient. See *Offutt v. Liberty Mutual Insurance Co., supra; Shattuck & Jones, Inc. v. Travelers Indemnity Co.,* 323 Mass. 146, 80 N.E.2d 313 (1948); *United Sponging Co. v. Preferred Accident Insurance Co., supra; Rosenthal v. American Bonding Co. of Baltimore, supra.*

Finally, while this holding leaves plaintiffs and those similarly situated without protection from those so skilled in the art of lockpicking that they enter without a trace, the policy is clear and unambiguous in its requirement that visible proof remain to attest to that entry. There being no such proof here, defendant is granted judgment dismissing the complaint and the Clerk is directed to enter judgment accordingly.

SO ORDERED.